**2013-1552**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————

IN RE TAYLOR MADE GOLF COMPANY, INC.

———————

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Reexamination No. 95/000,378

———————

**CORRECTED APPELLANT'S BRIEF**

———————

GARY A. CLARK
BRIDGETTE AGNESS
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
(213) 620-1780

*Attorneys for Appellant*
*Taylor Made Golf Company, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Appellant Taylor Made Golf Company, Inc. certifies the following:

1.    The full name of every party represented by me is:

Taylor Made Golf Company, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Taylor Made Golf Company, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or amicus curiae represented by me are:

adidas AG
adidas North America, Inc.

4.    The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are appearing in this Court are:

Sheppard, Mullin, Richter & Hampton LLP - Gary A. Clark and Bridgette Agness

Dated: January 10, 2014

BRIDGETTE A. AGNESS
*Attorney for Appellant*
*Taylor Made Golf Company, Inc.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    STATEMENT OF RELATED CASES ........................................................1

II.   JURISDICTIONAL STATEMENT ......................................................1

III.  STATEMENT OF THE ISSUES ..........................................................1

IV.  STATEMENT OF THE CASE ..............................................................3

V.   STATEMENT OF FACTS .....................................................................6

     A.    The '450 patent .........................................................................6

          1.    Claims at issue ...............................................................6

          2.    Overview of the '450 patent .........................................8

     B.    The Prior Art ...........................................................................11

          1.    Parente ...........................................................................11

          2.    Reynolds, Jr. ..................................................................12

     C.    The Board's Decision .............................................................13

     D.    The Board's Rehearing Decision ...........................................17

VI.  SUMMARY OF THE ARGUMENT ....................................................19

VII. ARGUMENT.......................................................................................22

     A.    Standard Of Review ...............................................................22

     B.    The Board Failed To Give Claims 8, 9, 12 And 13 "Their Broadest Reasonable Interpretation Consistent With The Specification" ...........................................................................23

          1.    The Board's adoption of the ordinary and plain meaning of "press fitting" failed to embody a complete understanding of press fitting consistent with the specification and claims ...........................................25

2. Claims 8, 9, 12 and 13 do not require "press fitting" or "latches" to be the sole means by which the weights are attached to the shell ................................................................. 29

3. The correct construction of "press fitting" and "latches" ......... 34

C. The Board Erred In Refusing To Find Claims 8, 9, 12 And 13 Invalid As Obvious Over Parente In View Of Glover (Ground No. III) And Invalid As Obvious Over Parente In View Of Glover, Ellingham, Ahn, Sillers, And Dammen (Ground No. VI) ........................................................................ 35

1. Parente discloses weights that are press fitted to the shell and secured to the shell with one or more latches .................... 36

2. Claims 8, 9, 12 and 13 are invalid under Ground Nos. III and VI ...................................................................... 39

D. The Board Erred In Refusing To Find Claims 8, 9, 12 And 13 Invalid As Obvious Over Parente In View Of Glover and Reynolds, Jr. (Ground No. V) And Invalid As Obvious Over Parente In View Of Glover, Ellingham, Ahn, Sillers, Dammen, and Reynolds, Jr. (Ground No. VII) .................................................... 40

1. Reynolds, Jr. discloses press fitted weights that are user-attachable and detachable ......................................... 41

2. Alternatively, it would have been obvious to modify Reynolds, Jr. to make the weights press fitted ......................... 43

3. Claims 8 and 12 are invalid under Ground Nos. V and VII ....................................................................... 46

VIII. CONCLUSION ............................................................... 47

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*In re Abbott Diabetes Care Inc.*
696 F.3d 1142 (Fed. Cir. 2012) ........................................................23

*Bicon, Inc. v. Straumann Co.*
441 F.3d 945 (Fed. Cir. 2006) ...........................................28, 31, 32

*Dickinson v. Zurko*
527 U.S. 150 (1999).........................................................................23

*Genentech, Inc. v. Chiron Corp.*
112 F.3d 495 (Fed. Cir. 1997) .........................................................33

*In re ICON Health & Fitness, Inc.*
496 F.3d 1374 (Fed. Cir. 2007) .................................................23, 25

*Kappos v. Hyatt*
132 S. Ct. 1690 (2012).....................................................................22

*KSR Int'l Co. v. Teleflex Inc.*
550 U.S. 398 (2007).........................................................22, 45

*In re NTP, Inc.*
654 F.3d 1268 (Fed. Cir. 2011) .......................................................22

*Perfect Web Techs, Inc. v. InfoUSA, Inc.*
587 F.3d 1324 (Fed. Cir. 2009) .......................................................44

*In Re Peterson*
315 F.3d 1325 (Fed. Cir. 2003) .......................................................22

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005) .........................................25, 26, 27

*Richardson v. Suzuki Motor Co., Ltd.*
868 F.2d 1226 (Fed. Cir. 1989) .......................................................38

Statutes

28 U.S.C. § 1295 ...................................................................................1

35 U.S.C. § 103 ..........................................................................2, 3, 46

35 U.S.C. § 112 .................................................................................24

Other Authorities

Federal Circuit Rule
    36.......................................................................................................1
    47.5....................................................................................................1

MANUAL OF PATENT EXAMINING PROCEDURE § 2111 .............................................23

# I.
## STATEMENT OF RELATED CASES

Pursuant to FEDERAL CIRCUIT RULE 47.5(a), Appellant and Third Party Requestor Taylor Made Golf Company, Inc. ("Taylor Made") confirms that this action has not been before this or any other appellate court under the same or similar title. An appeal from a district court action for alleged infringement of the patent at issue in this appeal and two related patents was previously before this Court in No. 2011-1537. This Court affirmed a summary judgment of non-infringement in a *per curiam* decision (Newman, Moore, and O'Malley, Circuit Judges) under Federal Circuit Rule 36, entered June 19, 2012.

Pursuant to FEDERAL CIRCUIT RULE 47.5(b), Taylor Made is not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

# II.
## JURISDICTIONAL STATEMENT

The Federal Circuit has jurisdiction to review the final determination of the Patent Trial and Appeal Board ("Board") under 28 U.S.C. § 1295(a)(4)(A).

# III.
## STATEMENT OF THE ISSUES

1.  Whether the Board erred in failing to give the terms "press fitting" and "latches," as recited in dependent claims 8, 9, 12 and 13, their broadest reasonable interpretation consistent with the specification.

2.      Whether the Board erred in failing to find that U.S. Patent No. 5,911,638 to Parente ("<u>Parente</u>") discloses press fitting a weight to the shell and securing a weight to the shell by latches, as required by dependent claims 8, 9, 12 and 13.

3.      Whether the Board erred in failing to find that U.S. Patent No. 5,746,664 to Reynolds, Jr. ("<u>Reynolds, Jr.</u>") discloses press fitting a weight to the shell, as required by dependent claims 8 and 12.

4.      Whether the Board erred in failing to hold claims 8, 9, 12 and 13 invalid under 35 U.S.C. § 103(a) as obvious over <u>Parente</u> in view of U.S. Patent No. 3,652,094 to Glover ("<u>Glover</u>") (Ground No. III).

5.      Whether the Board erred in failing to find claims 8 and 12 invalid under 35 U.S.C. § 103(a) as obvious over <u>Parente</u> in view of <u>Glover</u> and <u>Reynolds, Jr.</u> (Ground No. V).

6.      Whether the Board erred in failing to find claims 8, 9, 12 and 13 invalid under 35 U.S.C. § 103(a) as obvious over as obvious over <u>Parente</u> in view of <u>Glover</u>, U.S. Patent No. 1,518,316 to Ellingham ("<u>Ellingham</u>"), U.S. Patent No. 6,015,354 to Ahn et al. ("<u>Ahn</u>"), U.S. Patent Application Publication No. 2002/0128089 to Sillers et al. ("<u>Sillers</u>"), and WIPO Publication No. WO 01/66199 to Dammen ("<u>Dammen</u>") (Ground No. VI).

7.      Whether the Board erred in failing to find claims 8 and 12 invalid under 35 U.S.C § 103(a) as obvious over <u>Parente</u> in view of <u>Glover</u>, <u>Ellingham</u>, <u>Ahn</u>, <u>Sillers</u>, <u>Dammen</u>, and <u>Reynolds, Jr.</u> (Ground No. VII).

## IV.
## <u>STATEMENT OF THE CASE</u>

On October 9, 2008, Taylor Made filed a request for *inter partes* reexamination of claims 1-18 of the '450 patent based on seven proposed grounds of rejection on the basis of obviousness ("Request").  (A0011.)  The examiner granted the Request, finding that it raised a substantial new question of patentability (A0034), and mailed a first Office Action adopting most of Taylor Made's proposed rejections (A0052-64.)

The Patent Owner filed a response (*see* A0011), in which it presented argument in an effort to overcome the rejections, including an attempt to establish secondary considerations.  Taylor Made filed third party comments in response, but due to a clerical error in mailing, the comments were deemed late and were not considered by the examiner.  (*Id.*)

The examiner issued an ACTION CLOSING PROSECUTION ("ACP") maintaining the rejections of claims 1-7, 10, 11 and 14-18, but withdrawing the rejections and confirming the patentability of dependent claims 8, 9, 12 and 13. (A0265 & A0271-280.)  The examiner considered and rejected the Patent Owner's

attempt to establish secondary considerations.  (A0294-300.)  The Patent Owner did not respond, and the examiner then mailed a RIGHT OF APPEAL NOTICE.  (A0012.)

On June 10-11, 2011, each party appealed the examiner's determinations that were adverse to it, though the Patent Owner did not present any arguments on secondary considerations.  (*Id*.)  Following briefing and oral argument, the Board issued a DECISION ON APPEAL ("Decision") on August 30, 2012.  The Board rejected the Patent Owner's appeal, affirming the examiner's rejections of claims 1-7, 10, 11 and 14-18 as obvious over <u>Parente</u> in view of <u>Glover</u> (Ground No. III), and as obvious over <u>Parente</u> in view of <u>Ahn</u>, <u>Glover</u>, <u>Ellingham</u>, and <u>Dammen</u> (Ground No. VI).  (A0317-332.)

The Board also affirmed the examiner's decision not to reject dependent claims 8, 9, 12 and 13 as obvious over <u>Parente</u> in view of <u>Glover</u> (Ground No. III), or as obvious over <u>Parente</u> in view of <u>Glover</u>, <u>Ellingham</u>, <u>Ahn</u>, and <u>Dammen</u> (Ground No. VI).  (A0335, A0336 & A0338.)  The Board concluded that the term "press fitting" could not be construed to cover the two-step method for press fitting a weight disclosed in the '450 patent.  (A0335.)  The Board also held that <u>Parente</u> fails to disclose or suggest press fitting or latching at least one weight to the club head.  (*Id*.)

The Board similarly affirmed the examiner's decision not to reject claims 8 and 12 as obvious over <u>Parente</u> in view of <u>Glover</u> and <u>Reynolds, Jr.</u>

(Ground No. V), or as obvious over Parente in view of Glover, Ellingham, Ahn, Dammen, and Reynolds, Jr. (Ground No. VII). (A0335, A0336 & A0338.) Again, the Board concluded that Reynolds, Jr. fails to disclose or suggest press fitting at least one weight to the club head, and that it would not have been obvious in view of Reynolds, Jr. to press fit weights. (A0336.) [1]

On September 27, 2012, Taylor Made filed a request for rehearing as to claims 8, 9, 12 and 13. (A0312.) On April 30, 2013, the Board issued a DECISION ON REQUEST FOR REHEARING ("Rehearing Decision"), granting in part the rehearing request. (A0340-348.) The Board modified its Decision by interpreting the claims to include both direct and indirect methods of press fitting and latching a weight to the shell, *i.e.*, "processes where the weighting material is attached to a member, and the member is press fit [or latched] to the club head." (A0343.) However, the Board declined to reverse its Decision affirming the examiner's refusal to reject claims 8, 9, 12 and 13 over the prior art, concluding that both Parente and Reynolds, Jr. fail to disclose press fitting or latching at least one weight to the club head. (A0343-348.) As a result, claims 8, 9, 12 and 13 stand confirmed as patentable over the prior art.

---

[1] The Board also refused to adopt the proposed rejection of claim 4 under Ground Nos. II and VII. (A0336-337.) Taylor Made is not appealing these proposed rejections because the Board has affirmed the rejection of claim 4 on alternative grounds. (A0337-338.)

On this appeal, Taylor Made challenges the Board's interpretations of "press fitting" and "latches," its application of those interpretations to the prior art, and its refusal to find dependent claims 8, 9, 12 and 13 invalid as obvious.

## V.
## STATEMENT OF FACTS

**A.    The '450 patent**

1.    Claims at issue

Taylor Made appeals the Decision and Rehearing Decision confirming the patentability of dependent claims 8, 9, 12 and 13.  Claims 8, 9, 12 and 13 depend directly or indirectly from claim 1.  Claim 1 reads as follows:

> 1.  A method for adjusting a center of gravity of a golf club head after its manufacture, the golf club including a head comprising a hollow shell having a plurality of thin walls that collectively form a club head, the club head including a face for striking a golf ball, a heel portion, a toe portion, a back portion and a sole and having an original center of gravity prior to addition of any weights, the club head further including a plurality of user-attachable and detachable, discrete weights arranged on the shell at spaced-apart locations, the method comprising:
>
> hitting golf balls with the club with the plurality of weights detachably secured to the shell in a first arrangement, in which the plurality of weights are positioned in at least two locations other than the sole, permitting movement of the center of gravity of the club head from the location of the original center of gravity toward the club face, wherein the sole is formed of one or more substantially planar surfaces at the bottom of the club head facing downwardly; and

after hitting golf balls with the club, forming a second arrangement with the plurality of weights detachably secured to the shell, the second arrangement moving the golf club head center of gravity forward of the original center of gravity in the general direction of a first axis extending between the face and back portion of the head and in the general direction of a second axis extending between the heel and the toe portions.

(A0008, 6:21-47.)  Dependent claims 8, 9, 12 and 13 read as follows:

8.  The method of claim 1, wherein the step of forming the second arrangement with the plurality of weights further comprises press fitting at least one of the plurality of weights to the shell.

9.  The method of claim 1, wherein the step of forming the second arrangement with the plurality of weights further comprises securing at least one of the plurality of weights to the shell by one or more latches.

….

12.  The method of claim 10, wherein the step of forming the second arrangement with the plurality of weights comprises press fitting at least one of a plurality of weights to the shell.

13.  The method of claim 10, wherein the step of forming the second arrangement with the plurality of weights comprises securing at least one of the plurality of weights to the shell by one or more latches.

(A0009, 7:5 – 8:4.) [2]

---

[2] The limitations in intermediate dependent claim 10 have no bearing on this appeal.

2. <u>Overview of the '450 patent</u>

The '450 patent is directed to a method of adjusting the center of gravity of a golf club head. As the patent explains,

> Golfers have long recognized that they could alter the weight, balance, and performance characteristics by selectively adding weight to club heads. Typically, weight is added by applying thin strips of lead tape with an adhesive backing to the club head. In this manner the swing weight is increased and the center of gravity (CG) is altered to change the dynamics of the head during the swing and, therefore, the ball flight characteristics after contact.

(A0006, 1:26-34.)

The patent discusses problems with adding lead tape to the outside of a club head. (*Id.*, 1:34-53.) It also addresses problems faced by manufacturers in adjusting the weight of golf clubs during manufacture. (*Id.*, 1:54 – 2:13.) The patent concludes that "there is a need for a golf club with a customizable CG that allows the CG to be altered by a golfer and/or the manufacturer." (A0007, 3:8-10.) However, the sole independent claim—claim 1—is limited to a method by which ***a golfer*** can adjust the CG, reciting "after its manufacture" by means of "user-attachable and detachable, discrete weights."

The main embodiment of the golf club head 100 disclosed in the patent (Figs. 1-5) comprises a face portion 110, an integrated sole and wall portion 112, and a crown portion 114 defining a body 116 with an interior

cavity 118. (A0007, 3:51-56; A0003-04, Figs. 1 & 5.) A removable port cover 120 provides access to the interior cavity to allow placement of weighting material, such as lead tape, into the interior cavity. (A0007, 3:58-62.) The weights can be arranged on the shell at spaced-apart locations, such as locations 510-532, to adjust the original CG of the golf club head. (*Id.*, 4:55-59; A0004, Fig. 5.) Figures 3 and 5 of the '450 patent are reproduced below.



The method of adjustment recited in claim 1 comprises the user hitting golf balls with the golf club with the plurality of weights secured to the shell in a first arrangement in which the weights are positioned in at least two locations other than the sole, permitting movement of the center of gravity of the club head from the location of the original center of gravity toward the club head face. After hitting golf balls with the club, the claimed method comprises the user forming a second arrangement with the plurality of weights detachably secured to

-9-

the shell, the second arrangement moving the golf club head center of gravity in the general direction of a first axis extending between the face and back portion of the club head and in the general direction of a second axis extending between the heel and toe portions.

Dependent claims 8 and 12 recite press fitting at least one of the plurality of weights to the shell of the club head, while dependent claims 9 and 13 recite securing at least one of the plurality of weights to the shell by one or more latches. Notably, the '450 patent does not disclose any weight that, in and of itself, is or could be press fitted or latched to the shell of a golf club head. The only weights disclosed are thin strips of lead tape (A0006-07, 2:28-33 & 3:62), and the only mention of press fitting or latching is as an alternative method of attaching the weighting-port cover 120 of the body 116 for closing the weighting port or opening formed in the body.

> The plurality of flush-mounted bolts 122 pass through the weighting-port cover 120 and screw into the recessed portions 310 of the body 116. Alternatively, other methods, such as a weighting-port cover that screws into the body 116, latches, press-fits, or the like may be used.

(A0007, 4:38-42; *see also* Fig. 3 above.)

The '450 patent goes on to describe that at least one weight can be secured to the port cover 120, at weight location 530. (A0008, 5:41-48; *see also*

Fig. 5 above.)  In other words, a weight is adhesively attached to the inside of the port cover, and the port cover is then press fitted or latched to the shell.

## B.  **The Prior Art**

The prior art references at issue on this appeal are summarized below. Since the Board has only confirmed the patentability of dependent claims 8, 9, 12 and 13, Taylor Made will limit its discussion to the prior art references and features that bear on the limitations of those claims.

### 1.  Parente

Parente discloses a hollow metal wood type club head including "a body 10 and a separate sole plate 12 which is securable to the body 10 via different length screws 14, 16, 18."  (A0020, 2:61-65; A0019, Figs. 1-4.)  "The body 10 has an empty internal cavity 32 and an opening 34 in lower wall 24 [that] leads into the cavity."  (A0021, 3:19-21.)  Parente's sole plate 12 is "secured in a machined recess in the body in which it has an interference or interlocking fit."  (*Id.*, 3:2-4; A0019, Figs. 1-3.)  The sole plate is further secured to the body via screws 14, 16, 18, which also serve as weights.  (A0021, 4:34-36.)  The screws 14, 16, 18 are received in through bores 43, 44, 45 in the sole plate 12 and into threaded engagement in threaded bores 40, 41, 42 formed in the body 10.  (*Id.*, 3:33-43.) Figures 1 and 3 are reproduced below:

-11-



2. Reynolds, Jr.

Reynolds, Jr. also teaches a method of weight adjustment in a club

head. It discloses a putter head with heel and toe vertical cavities 47 that

"releasably secure the removable weights 41 within the putter head." (A0029, 4:1-

2.) Reynolds, Jr. states that "a weight 41 having a flat top and a downward

extending cylindrical portion with a central bore 45 is appropriately sized to fit

snugly but smoothly within the weight recess 47 within the golf club head 11."

(*Id.*, 4:3-7.) It further states that "a retaining bolt 42 moves freely through a non-

threaded weight bore 45 and engages a threaded recess 43 in the center of the

weight recess 47 drawing the weight into a rigid secure position within the recess."

(*Id.*, 4:7-10.) Thus, the bolt serves both to draw the weight into position and to

hold it there.

Figures 2 and 2A of Reynolds, Jr. are reproduced below.



FIG. 2

FIG. 2A

## C.    The Board's Decision

In its Decision, the Board noted that the '450 patent specification fails to define the claim terms "press fitting" and "latches." (A0335.) The Board thus concluded that it should interpret the terms based on their plain and ordinary meaning, relying on the definitions offered by the Patent Owner's declarant, Peter J. Piotrowski. (*Id.*) Mr. Piotrowski opined that a Wikipedia article attached to his declaration as Exhibit 25 defines "press fit" as it would be understood by one of ordinary skill in the art. (A0144, ¶¶ 72 & 73.) The Wikipedia article states in pertinent part:

> An interference fit, also known as a press fit, is a fastening between two parts which is achieved ***by friction*** after the parts are pushed together, rather than by any other means of fastening. For metal parts in particular, the friction that holds the parts together is ***often greatly increased by compression of one part against the other***,

which relies on the tensile and compressive strengths of the materials the parts are made from.

(A0231, emphasis added.) [3]  The Wikipedia article further states:

Tightness of fit is controlled by amount of interference ("allowance").  Formulas exist to compute the "allowance" (planned difference from nominal size) that will result in various strengths of fit such as *loose fit*, light interference fit, and interference fit.

(*Id*.)  The article goes on to discuss use of hydraulic presses capable of generating very large amounts of force, or thermal expansion (heat) or contraction (cold), as methods of assembling interfering parts.  (A0231-232.)

Significantly, there is no discussion in the Wikipedia article of *disassembling* press fitted parts.  Consistent with this absence, in attempting to distinguish a press fit from the threaded connections in Parente Mr. Piotrowski stated, "As opposed to press fit attachments, screws can work loose."  (A0143, ¶ 69.)  He thus implied that the construction of "press fit" that he was advocating inherently yields a permanent, non-detachable assembly of parts that cannot loosen relative to one another.  (*Id*.)

---

[3] All emphasis has been added unless otherwise indicated.

Relying on the Piotrowski Declaration, the Board construed "press fit" to mean "an interference fit formed by pressing, or forcing one component into another." (A0335.) It construed "latch" to mean "a structure that slides, snaps, or is spring [sic] into place to hold by a tab or hook position a component in place." (*Id.*)

In construing "press fit," the Board did not acknowledge any of following points from the Wikipedia article:

- a press fit can result merely from friction between the parts, without either part undergoing compression;

- the tightness of a press fit is controlled by the amount of interference between the parts; and

- minimal interference between the parts can result in a "loose fit."

The Board's claim construction also gave only fleeting consideration to the context in which the term "press fitting" is used. Claims 8 and 12 depend from claim 1, which requires "a plurality of ***user***-attachable and detachable, discrete weights" to allow a golfer to adjust the center of gravity of the club head "after its manufacture." (A0008, 6:21-30.) This requirement includes the press fitted weight(s) of dependent claims 8 and 12 ("press fitting at least one of the plurality of weights to the shell"). The Board concluded that this did not require a special definition of "press fit" because the '450 patent does not require that the

weights be attachable or detachable in any particular manner, *i.e.*, without use of a tool. (*Id.*) The Board thus accorded no significance to claim 1's recitations of "after its manufacture" and "user-attachable and detachable."

In addition, the Board refused to construe claims 8, 9, 12 and 13 to include indirectly press fitting a weight to the golf club. The Board explained:

> While Requestor suggests that the term "press fit" should be interpreted to include indirect press fitting of a cover including lead tape to the shell of the golf club head as well as weights that are "pressed on" to the shell of a golf club head, we do not agree that such an interpretation is consistent with the broadest reasonable interpretation of the claims. Regarding Requestor's indirect press fitting arguments, we do not agree that the description of the different means of attachment of the cover to the golf club head in the '450 patent is relevant to a claim limitation relating to the attachment of the weights to the golf club head.

(*Id.*)

Based on its interpretation of the claims, the Board concluded that Parente and Reynolds, Jr. fail to disclose or suggest press fitting or latching weights to the shell, as recited in claims 8, 9, 12 and 13. (A0335-336.) The Board also held that it would not have been obvious to modify the weights in Reynolds, Jr. to be press fitted to the club head. (A0336.)

D.    **The Board's Rehearing Decision**

In response to Taylor Made's Request for Rehearing, the Board

modified its construction of "press fit" to include indirect attachment of the weight

to the golf club head.  (A0343.)  The Board stated that

> the broadest reasonable interpretation of "press fitting at
> least one of the plurality of weights to the shell"
> encompasses the two-step method disclosed in the
> Specification of the '450 patent of attaching a weight to
> the surface of the member, and then securing the member
> to the shell by press fitting, i.e., "indirect" press fitting.

(*Id*.)  It concluded that the same applies to "latches."  (*Id*.)  However, the Board

declined to modify its adoption of the plain and ordinary meaning of "press fit,"

finding that the definition was consistent with the specification of the '450 patent.

(A0343-345.) [4]

The Board also concluded that Parente does not teach indirect press

fitting or latching of weights to the club head.  (A0345-346.)  Taylor Made had

argued that Parente's screws are intended to be tightened against the sole plate so

that they do not loosen during use of the golf club (a risk acknowledged by

Mr. Piotrowski, as noted above), and that this tightening of the screws necessarily

---

[4] The Board also concluded that "press fit" should not be construed to include the
"pressed on" pieces of lead tape disclosed in the '450 patent.  (A0344.)  Taylor
Made never argued that pressing lead tape onto the shell of the golf club head
constitutes "press fitting" and agrees with the Board on this point.

compresses the sole plate between the screw heads and the body of the club head, resulting in a frictional engagement between the sole plate and the screw heads. Taylor Made analogized the frictional engagement of _Parente_'s sole plate and screw heads to the adhesive engagement between the lead tape and the port cover in the '450 patent; that is, as a means by which the weight is at least partly attached to the component that is press fitted to the shell of the golf club head. Taylor Made further pointed out that it is irrelevant that _Parente_'s screw weights are also threaded to the club head. Claims 8, 9, 12 and 13 are open-ended "comprising" claims and do not require that press fitting or latching must be the sole means by which any weights are secured to the shell.

The Board rejected Taylor Made's arguments, stating that "the interface between the screw head and the sole plate is actually merely surface to surface contact, not an engagement in the sense of an attachment of those surfaces to each other as implied by the Requestor's analogy." (A0346.) At the same time, the Board noted that "[t]he threaded engagement results in clamping loads that further secures the sole plate between the screw heads and the sole plate." (_Id_.) Yet, it concluded that _Parente_'s screws are attached to the golf club head solely through their threaded engagement with the shell of the golf club head, and that the interference fit between the sole plate and the golf club shell does not contribute to securing the weights to the shell. (_Id_.) The Board did not address Taylor Made's

argument that the claims do not require press fitting or latching to be the sole means of securing the weights to the shell, or that it is the friction between Parente's screw heads and sole plate that inhibits the screws from working loose.

With regard to Reynolds, Jr., the Board declined to alter its interpretation of "press fit" to include "the snug but removable fit, as in the weights disclosed in Reynolds, Jr." (A0347.) The Board also stood by its reasoning that it would not have been obvious to increase the size of the weights of Reynolds, Jr. in order to make the weights more secure because "such a modification lacks rational underpinnings" (*Id.*) Notwithstanding Mr. Piotrowski's statement that "screws can work loose" (A0143, ¶ 69), the Board concluded that "there is no evidence that the weights would inadvertently come loose with [] a retaining bolt as asserted by Requestor, which would warrant a modification of the weight fitting system specifically disclosed in Reynolds, Jr." (A0347).

## VI.
## SUMMARY OF THE ARGUMENT

The Board correctly concluded, for purposes of this reexamination proceeding, that the broadest reasonable interpretation of claims 8, 9, 12 and 13 covers indirect press fitting or latching of weights to the shell of the golf club head. However, the Board made three primary errors of claim construction in affirming the examiner's decision not to reject these claims as obvious.

One, the Board's construction of "press fit" was deficient because it failed to take into account that (a) a press fit can result merely from friction between the parts, without either part undergoing compression, and (b) minimal interference between the parts can result in a loose fit. This construction is supported by the evidence, *viz.*, the Wikipedia article offered by the Patent Owner's declarant.

Two, the Board's construction essentially reads out the claim requirement that the press fitted weight(s) must be attachable and detachable "after its manufacture" by a "user." This claim limitation mandates a construction that, at a minimum, includes "press fitting" of weights solely by friction, since press fitting by compression generally requires greatly increased force or thermal methods using tools or equipment not readily available to a golfer, and may even preclude the user from attaching and/or detaching the weights.

Three, the Board failed to acknowledge that claims 8, 9, 12 and 13 are open-ended "comprising" claims and do not require that press fitting or latching must be the sole means by which weights are secured to the shell. There is nothing in the '450 patent that requires a contrary interpretation.

These claim construction errors resulted in the Board's erroneous affirmance of the examiner's decision not to reject claims 8, 9, 12 and 13. Parente discloses that the sole plate is secured in place partly by an interference or

interlocking fit, and the Board correctly noted that <u>Parente</u>'s screw heads apply clamping loads to further secure the sole plate in place. The Board failed to recognize that those clamping loads necessarily produce friction between the screw heads and the sole plate according to the same basic mechanical principle underlying the Patent Owner's Wikipedia article, *i.e.*, friction results between two parts held closely together by force. The Board's conclusion to the contrary is unsupportable.

      <u>Parente</u>'s screws are thus held in place at least partly by the friction between the screw heads and the sole plate, and the sole plate is held in place at least partly by its interference or interlocking fit with the golf club shell. This constitutes an indirect press fit of the screw weights to the shell. It is irrelevant to these open-ended "comprising" claims that <u>Parente</u>'s screws and sole plate are also held in place partly by other means.

      The user-attachable and detachable weights in <u>Reynolds, Jr.</u> are also held in place partly by press fitting. The weights are received with a snug fit, which by definition is a close fit that necessarily results in contact between the weight and the club head, which in turn necessarily produces at least some friction. This is confirmed by <u>Reynolds, Jr.</u>'s statement that one function of the retaining bolt is "drawing the weight into a rigid secure position within the recess." Drawing the weight into position should be unnecessary in the absence of friction-

-21-

producing contact between the weight and club head.  Again, it is irrelevant that the weights are also held in place by retaining bolts.

The Board also erred in reaching its obviousness conclusion regarding <u>Reynolds, Jr.</u>  The Board's insistence on finding "rational underpinnings" is, in effect, a nullification of the Supreme Court's mandate in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007), that a teaching, suggestion or motivation is not required—particularly in the case of simple mechanical inventions, where the invention may just be common sense.  In any event, Mr. Piotrowski's statement that "screws can work loose" completely refutes the Board's finding that there is no evidence to warrant a conclusion that it would have been obvious to increase the size of <u>Reynolds, Jr.</u>'s weights to make them more secure.  Thus, the factual bases for the Board's conclusion of non-obviousness are unsupportable.

## VII.
## ARGUMENT

### A.    Standard Of Review

Questions of law, including claim interpretation, statutory interpretation, and the ultimate decision of obviousness, are reviewed *de novo*.  *See In re NTP, Inc.*, 654 F.3d 1268, 1373 (Fed. Cir. 2011).  In contrast, the Board's underlying factual determinations, including what a reference teaches, whether a reference teaches away, and whether there are secondary considerations of non-obviousness, are reviewed under the substantial evidence standard.  *See In Re*

*Peterson*, 315 F.3d 1325, 1328 (Fed. Cir. 2003). Substantial evidence review is a

deferential standard, *Kappos v. Hyatt*, 132 S. Ct. 1690, 1695 (2012), "requiring a

court to ask whether a 'reasonable mind might accept' a particular evidentiary

record as 'adequate to support a conclusion,'" *Dickinson v. Zurko*, 527 U.S. 150,

162 (1999).

Claims under examination before the PTO are given their broadest

reasonable interpretation consistent with the specification. *In re ICON Health &*

*Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007). Accordingly, the Board's

"broadest reasonable interpretation" is reviewed de novo. *In re Abbott Diabetes*

*Care Inc.*, 696 F.3d 1142, 1148 (Fed. Cir. 2012).

**B.** **The Board Failed To Give Claims 8, 9, 12 And 13 "Their Broadest Reasonable Interpretation Consistent With The Specification"**

The Board, on rehearing, properly construed claims 8, 9, 12 and 13 to

include both direct and indirect methods of press fitting and latching weights to the

shell of the golf club head. This is consistent with the legal requirement that

claims be given their "broadest reasonable construction 'in light of the

specification as it would be interpreted by one of ordinary skill in the art.'" *See*

MANUAL OF PATENT EXAMINING PROCEDURE ("MPEP") § 2111; *In re ICON*

*Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007) ("During

reexamination, as with original examination, the PTO must give claims their

broadest reasonable construction consistent with the specification.")

Because the '450 patent fails to disclose a weight that is press fit or latched to the club head, and instead only discloses press fitting or latching a port cover to the body of a club head, with a weight coupled or attached to the port cover, claims 8, 9, 12 and 13 must be construed to cover a method using such a structure. That is, the broadest reasonable interpretation of these claims is that they cover a method using a golf club head in which a weight is coupled or attached to another member that, in turn, is press fitted or latched to the shell of the golf club head body. [5]

The Board's construction of "press fit," however, was deficient. As discussed below, the Board's construction failed (a) to embody a complete understanding of the term as described in the Wikipedia article relied on by the Patent Owner's declarant, and (b) to take into account the claim requirement that the claimed method is practiced "after its manufacture" with weight(s) that are "user-attachable and detachable."

The Board's construction was further deficient in failing to recognize that claims 8, 9, 12 and 13—as open-ended "comprising" claims—do not require

---

[5] Because the claims also cover direct press fitting and latching of weights, Taylor Made submits that they are invalid under 35 U.S.C. § 112 for lack of enablement and written description. Taylor Made is mindful, however, that original claims cannot be rejected on that basis in reexamination.

that "press fitting" or "latches" must be the sole means by which the weight(s) are
secured to the shell.

1. <u>The Board's adoption of the ordinary and plain meaning of "press
   fitting" failed to embody a complete understanding of press fitting
   consistent with the specification and claims</u>

The Board correctly noted that the specification of the '450 patent fails
to define the term "press fitting." (A0335.)  For this reason, the Board interpreted
the claims based on the ordinary and plain meaning of the term. (*Id*.)  The Board,
relying on the Piotrowski declaration and Wikipedia article submitted by the Patent
Owner, determined that a "press fit" is "an interference fit formed by pressing, or
forcing one component into another." (A0343.)  Taylor Made does not disagree
with this construction of "press fit" as far as it goes.  However, Taylor Made
submits that the Board erred in failing to recognize the more detailed aspects or
principles of press fitting described in the Wikipedia article as they apply, or do not
apply, in the context of the claims at issue.

Claims 8 and 12 of the '450 patent depend from claim 1, which relates
to a method of adjusting the CG of the golf club head "***after*** its manufacture" and
requires that the weights be "***user***-attachable and detachable." (A0008, 6:28-29.)
Thus, claim 8 and 12's recitation of "press fitting" must be construed consistent
with the requirement that the weights also be readily attachable and detachable by
the user, after manufacture, *i.e.*, without use of sophisticated manufacturing

techniques.  As the Federal Circuit stated in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) "the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms." Claims 8 and 12, by incorporating claim 1's "after its manufacture" and "user-attachable and detachable" limitations, perfectly illustrate this principle.  Logically, the "after its manufacture" and "user" limitations mean that the press fitted weight(s) cannot be fitted overly tight, since the user would then be unable to readily attach and detach the weight(s).

The Wikipedia article relied on by the Board—though mostly devoted to manufacturing principles and techniques—does briefly allude to the type of press fitting that may be applicable in the context of claims 8 and 12.  It notes that "a press fit … is a fastening between two parts which is achieved by friction after the parts are pushed together."  (A0231.)  The article goes on to state that "the friction that holds the parts together is often greatly increased by compression of one part against the other."  (*Id*.)  The clear implication is that, broadly speaking, a press fit can be achieved by friction without compression.

The Wikipedia article goes on to discuss tightness of fit, noting that it is controlled by the amount of interference between the parts (the "allowance") that will result in "various strengths of fit such as loose fit, light interference fit, and interference fit."  (*Id*.)  Taylor Made submits that the type of press fit contemplated

by the '450 patent would be a pure friction fit, without compression, resulting in a "loose fit" (or at most a "light interference fit").

The Board's construction of "press fit" completely ignored the foregoing aspects of the Wikipedia article. This may be explained by the fact that the article is mostly concerned with the use of press fitting in manufacture to make more permanent attachments via compression between the parts. For example, the only methods discussed in the article for press fitting parts are: (1) forcing parts together using a press that can generate "very large amounts of force"; and (2) heating or cooling parts to induce thermal expansion or contraction. (A0231-232.) Both methods involve specialized machinery or equipment typically not carried by a golfer or found in a golf bag.

The methods discussed in the Wikipedia article are used in manufacture for permanent assembly of parts, not parts that are intended to be routinely attached and detached by a user. Indeed, the article only discusses "assembling" parts using these methods; there is no discussion of disassembling the parts once press fitted together. (*Id.*) Since claims 8 and 12 are specifically limited to a method of adjusting the CG of a golf club head "after its manufacture" and require the weight(s) to be both "attachable and detachable" by the "user," the discussion of these manufacturing techniques in the Wikipedia article are not relevant to the interpretation of the claims (except perhaps to illustrate what the

claims do *not* cover).

Taylor Made submits that its position is supported by the fact that the '450 patent does not disclose any tool for the user to attach or detach a press fitted weight. The Board somehow found this supportive of a broad interpretation of "press fit" without qualification. Taylor Made maintains instead that the lack of disclosure of a tool—or any discussion of other processes for attaching or detaching a press fitted weight—is an indication that either the weight has to be attachable and detachable without the use of a tool, or at most by use of a simple handheld tool reasonably familiar to and accessible by a golfer (such as the screwdriver or wrench obviously needed to remove the bolts 122 for holding port cover 120 in place, as shown in Fig. 3 of the '450 patent). The claims cannot cover press fitting a weight so forcefully that it would take specialized equipment of the type only used by manufacturers to press fit parts together with no intention of ever disassembling them.

It is also significant that the '450 patent specification describes "a need for a golf club head with a customizable CG that allows the CG to be altered by *a golfer and/or the manufacturer*." (A0007, 3:8-10.) Yet, claims 8 and 10 are explicitly limited to a method for adjusting the CG "after its manufacture" with "user-attachable and detachable, discrete weights." (A0008, 6:28-29.) The Patent Owner clearly excluded both the manufacturer and the use of sophisticated

manufacturing techniques from the claim scope. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("claims are interpreted with an eye toward giving effect to all terms in the claim"). By limiting claims 8 and 12 to a method practiced "after its manufacture" with weight(s) that are "user-attachable and detachable," the Patent Owner clearly intended to exclude press fitting that requires specialized manufacturing equipment.

2.  <u>Claims 8, 9, 12 and 13 do not require "press fitting" or "latches" to be the sole means by which the weights are attached to the shell</u>

In affirming the examiner's decision not to reject claims 8, 9, 12 and 13 as obvious over <u>Parente</u> in view of <u>Glover</u> and <u>Reynolds, Jr.</u>, the Board appears to have construed the claims to require that press fitting or latching must be the sole means by which the weights are attached to the shell. The Board erred.

In its Request, Taylor Made proposed the rejection of claims 8 and 12 as obvious over <u>Parente</u> in view of <u>Glover</u> and <u>Reynolds, Jr.</u> (Ground No. V). (A0036.) Taylor Made explained that <u>Reynolds, Jr.</u>'s weights 41 are sized to fit "snugly but smoothly" within the weight recesses 47 in the golf club head. (A0029, 3:52-55 & 4:3-14; A0025-26, Figs. 2-3.) <u>Reynolds, Jr.</u> further discloses that each retaining bolt 42 "moves freely through a non-threaded weight bore 45 and engages a threaded recess 43 in the center of the weight recess 47 drawing the weight into a rigid secure position within the recess." (A0029, 4:7-10.) Taylor Made argued that <u>Reynolds, Jr.</u> disclosed press fitted weight inserts with bolts, and

that it would have been obvious to substitute them for the screws or other threaded members used for weights in <u>Parente</u> and <u>Glover</u>. This is a simple substitution of one known element (press fitted weights and bolts) for another (weight screws) to obtain a predictable result (weights held snugly and securely in place).

In the first Office Action, the examiner adopted Taylor Made's proposed rejection of claims 8 and 12. In doing so, the examiner explained that

> Reynolds, Jr. shows a golf club head having user attachable weights 41. The weights are snugly fit into openings in the head and held by screws 42. It would have been obvious to one of ordinary skill in the art at the time the invention was made to replace the screws/weights of Parente with the weight 41 and screw 42 configuration of Reynolds, Jr. with the weights fitting snuggly [sic] into the openings in the removable sole plate, because the separate weights would prevent vibration of the screw in the head.

(A0055.)

In its Response to the Office Action, the Patent Owner argued that one of ordinary skill in the art would understand that there is a difference between a "snug" fit and a "press fit":

> A "snug" fit suggests a fit where one part is closely fit against another part, but not so closely as to interfere with the other part. Piotrowski Decl. ¶ 70. In contrast, a "press fit" or "interference fit" suggests that one part pushes against, or interferes with, another part, creating friction. <u>Id.</u> The weights 41 of Reynolds, Jr. are therefore not press fitted. <u>Id.</u>

(A0084.)  The Patent Owner also argued that <u>Reynolds, Jr.</u> describes "press fitting" other weights 46 into the body of the club head.  (*Id.*)  Thus, "the absence of a reference to 'press fitting' when referring to the weights 41 would further lead one of ordinary skill in the art to understand the weights 41 are not press fitted."  (*Id.*)

In the ACP, the examiner apparently was persuaded by the Patent Owner's response to change her position and withdraw the rejection of claims 8 and 12 under Ground No. V.  (A0271-279.)  The examiner stated that

> [A] snug fit is not necessarily the same as "press fit".  In fact, if the weights were press fit into the openings, the screws would not be needed.  Accordingly, the references do not teach press fit weights and the rejection is not adopted.

(A0274-275.)  Inherent in the examiner's decision is her belief that the claims require press fitting to be the ***sole*** means of securing the weights to the shell.[6]

Because the Board affirmed the examiner's refusal to adopt the proposed rejection of claims 8 and 12, it can be assumed that the Board also agreed with the examiner's finding that the claims require press fitting to be the ***sole*** means of securing the weights to the shell.  The examiner and the Board erred.

First, the examiner's conclusion that "if the weights were press fit into

---

[6] As noted in section IV, *supra*, the Patent Owner also attempted to establish secondary considerations in response to the office action, but examiner rejected the Patent Owner's evidence and arguments.  (A0294-300.)

the openings, the screws would not be needed" is insupportable.  It is apparent that

the other weights 46 that <u>Reynolds, Jr.</u> describes as press fitted "during

manufacturing" (*e.g.*, A0029, 3:55-59) are intended to be permanently installed

and not detachable.  In other words, <u>Reynolds, Jr.</u> used the term "press fit" in a

more restrictive manner than did the Patent Owner in the '450 patent.

     The Board's conclusion is also refuted by <u>Parente</u>, which discloses

that "the sole plate 12 is secured in a machined recess in the body in which it has

an interference or interlocking fit."  (A0021, 3:2:4.)  <u>Parente</u> goes on to state:

> In the illustrated embodiment, the weight adjustment
> screws also have the function of securing the sole plate to
> the body of the club head.  Preferably, interlocking
> formations are provided for ***releasably*** holding the sole
> plate in position as the screws are secured.  ***In the
> illustrated embodiment, the sole plate is an interference
> fit*** in the recessed area of the lower wall by means of the
> lugs 48 which extend into opening 34 and push the front
> face up against the rim face behind front face 20.  This
> ensures that the screws can be readily changed without
> the sole plate falling out of the recess, should a player
> wish to adjust the weighting.

(*Id.*, 4:34-44.)  <u>Parente</u> clearly teaches that a press fitted part can be releasable such

that screws also may be needed if it is desired to hold the part more securely in

place.

     Second, claims 8, 9, 12 and 13 are "comprising" claims.  The

transitional term "comprising" is inclusive or open-ended and does not exclude

additional, unrecited elements or method steps. *See, e.g., Invitrogen Corp. v. Biocrest Mfg.*, L.P., 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps."); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.). Thus, claims 8, 9, 12 and 13 cannot be construed to require that press fitting be the sole means by which the weights are secured to the shell.

Finally, the '450 patent specification supports the position that the claim doesn't require press fitting to be the sole means by which the weight is attached to the shell. As discussed in section VI.B., *supra*, the Board correctly held that the claim covers the indirect method of press fitting a weight to the shell. In the example in the '450 patent, the weight on the cover (position 530) is adhesively attached to the cover 120 and the cover is press fit to the shell. (A0008, 5:41-48.) Thus, the weight at position 530 is attached to the club head by two different means. It is irrelevant that the weight is held to the cover by only one means (adhesive attachment). The claim requires attaching the weight to the club head, not the cover, and that requires two means in the press fitting

embodiment: one to attach the cover to the club head, and another to attach the weight to the cover.

Accordingly, the claims should not be interpreted to require that press fitting or latches must be the sole means by which the weight is attached to the shell.

3.  The correct construction of "press fitting" and "latches"

Taylor Made submits that the correct construction of claims 8, 9, 12 and 13 includes both direct and indirect methods of press fitting and latching a weight to the shell.

Additionally, in the context of claims 8 and 12, "press fitting" should be construed as a fastening between a weight and a golf club shell achieved by friction in which the weight is readily attachable and detachable by a user (*i.e.*, golfer) without use of specialized equipment. Taylor Made accepts the Board construction of "latch" to mean "a structure that slides, snaps, or is spring [sic] into place to hold by a tab or hook position a component in place."

Finally, it is irrelevant how many means are used to attach the weight to the club head. The claims do not require that press fitting and latches must be the sole means of attaching the weight to the club head.

**C. The Board Erred In Refusing To Find Claims 8, 9, 12 And 13 Invalid As Obvious Over Parente In View Of Glover (Ground No. III) And Invalid As Obvious Over Parente In View Of Glover, Ellingham, Ahn, Sillers, And Dammen (Ground No. VI)**

In its Request, Taylor Made proposed the rejection of dependent claims 8, 9, 12 and 13 as obvious over Parente in view of Glover (Ground No. III) and as obvious over Parente in view of Glover, Ellingham, Ahn, Sillers, and Dammen (Ground No. VI). (A0036.) Taylor Made's proposed rejections relied on Parente for the disclosure of a weight press fit or latched to the shell.

As explained, Parente discloses an embodiment in which the club head has a separate sole plate 12 "secured in a machined recess in the body in which it has an interference or interlocking fit." (A0021, 3:2-4; A0019, Figs. 1-3.) The sole plate is further secured to the body via different length screws 14, 16, 18, which also serve as CG-adjusting weights. (A0021, 4:34-36.) The sole plate is thus press fitted or latched to the body, with the screw weights securely coupled or attached to the sole plate and body. Taylor Made argued that Parente's disclosure is analogous to the disclosure of the '450 patent, in which a weight is attached to the port cover 120 that, in turn, is press fit or latched to the body of the golf club head.

While the Board modified its construction of claims 8, 9, 12 and 13 to include indirect methods of "press fitting" and "latches," the Board maintained its refusal to adopt the proposed rejection. (A0345-346.) The Board stated that it does not agree that the "'frictional engagement' between the screw (*i.e.*, weight)

and the sole plate is analogous to adhesively engaging (*i.e.*, attaching by adhesive) a weight to the port cover." (A0345.) The Board stated that since the sole plate's through bores are not threaded, "the interface between the screw head and the sole plate is actually merely surface to surface contact, not an engagement in the sense of attachment of those surfaces to each other." (A0346.) The Board is incorrect.

1. <u>Parente discloses weights that are press fitted to the shell and secured to the shell with one or more latches</u>

In <u>Parente</u>, the screws, the sole plate, and the body are all coupled or attached together to form an assembly. Clearly <u>Parente</u>'s screws are intended to be tightened against the sole plate so that they do not loosen during use of the golf club. This is illustrated in Figure 3 of <u>Parente</u>, which is reproduced below.



FIG. 3

Tightening of the screws in <u>Parente</u> necessarily compresses the sole plate between the screw heads and the body of the club head, resulting in a frictional engagement between the sole plate and the screw heads. It is common

knowledge that such frictional engagement would be essential to maintaining the screws in place as weights on the golf club head, considering the forces applied to the club head when it is swung and strikes golf balls.  As explained in the Wikipedia article, "[f]or metal parts in particular, the friction that holds the parts together is often greatly increased by compression of one part against the other." (A0231.)  It would be well understood that this same principle applies to the screw heads in <u>Parente</u>.  A user would naturally tighten the screws to try to ensure that they do not work loose, thereby increasing the friction between the screw heads and the sole plate.

The frictional engagement of <u>Parente</u>'s sole plate and screw heads is analogous to the adhesive engagement between the lead tape and the port cover in the '450 patent.  Both are applied with pressure, and both can be detached and repositioned on the member.  It is irrelevant that <u>Parente</u>'s screw weights are not adhesively attached to the sole plate.  Claims 8, 9, 12 and 13 are satisfied by any user attachable and detachable fastening means or method for attaching the weight to the cover.

To be clear, Taylor Made is not arguing that either <u>Parente</u>'s frictional engagement or the '450 patent's adhesive engagement, in and of themselves, constitute press fitting.  Rather, to the extent that the '450 patent's lead tape is indirectly press fitted by virtue of adhesive engagement with the press fitted port

cover 120, <u>Parente</u>'s screws 14, 16, 18 are likewise indirectly press fitted by virtue of frictional engagement with the press fitted sole plate 12. In other words, <u>Parente</u> discloses as much as the limitations of claims 8, 9, 12 and 13 require, which is all that the law mandates. *See Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989) (prior art reference need only show invention "in as complete detail as is contained in the patent claims.").

It is also irrelevant that the weights in <u>Parente</u> are attached to the club head by multiple means, including: (1) the interference fit or interlocking of the sole plate, (2) the threading of the screws into the club head, and (3) the frictional adhesion between the screw heads and the sole plate. As discussed, claims 8, 9, 12 and 13 are open-ended "comprising" claims and do not require that press fitting or latching be the sole means by which the weights are secured to the shell. Thus, the number of means employed to secure the weight to the shell (two, three, four, etc.) is irrelevant.

Accordingly, <u>Parente</u> teaches weights that are indirectly press fitted or latched to the club head, as disclosed and claimed in the '450 patent. Thus, the Board erred in concluding that <u>Parente</u> fails to teach weights that are press fitted or latched to a club head.

2.    <u>Claims 8, 9, 12 and 13 are invalid under Ground Nos. III and VI</u>

The Board correctly determined that claims 1 and 10, from which claims 8, 9, 12 and 13 depend, are invalid as obvious over <u>Parente</u> in view of <u>Glover</u>.  The Board also correctly determined that claims 1 and 10 are invalid under as obvious over <u>Parente</u> in view of <u>Glover</u>, <u>Ellingham</u>, <u>Ahn</u>, <u>Sillers</u>, and <u>Dammen</u>.  Thus, with respect to claims 8, 9, 12 and 13, the only issue on appeal, and the only issue standing in the way of an obviousness determination, is whether <u>Parente</u> teaches indirect press fitting and latching weights to the shell.

As shown above, <u>Parente</u> does teach indirect press fitting and latching of weights.  Therefore, claims 8, 9, 12 and 13 are invalid as obvious over the prior art.  There is nothing in the Board's decision or in the record, including any evidence or arguments of secondary considerations, that mandates a different result.

Accordingly, Taylor Made requests the Court to hold that claims 8, 9, 12 and 13 are invalid as obvious over <u>Parente</u> in view of <u>Glover</u> (Ground No. III) and invalid as obvious over <u>Parente</u> in view of <u>Glover</u>, <u>Ellingham</u>, <u>Ahn</u>, <u>Sillers</u>, and <u>Dammen</u> (Ground No. VI).

**D.** **The Board Erred In Refusing To Find Claims 8, 9, 12 And 13 Invalid As Obvious Over Parente In View Of Glover and Reynolds, Jr. (Ground No. V) And Invalid As Obvious Over Parente In View Of Glover, Ellingham, Ahn, Sillers, Dammen, and Reynolds, Jr. (Ground No. VII)**

In its Request, Taylor Made proposed the rejection of claims 8 and 12 as obvious over Parente in view of Glover and Reynolds, Jr. (Ground No. V), and it proposed the rejection of claims 8 and 12 as obvious over Parente in view of Glover, Ellingham, Ahn, Sillers, Dammen and Reynolds, Jr. (Ground No. VII). (A0036.)  With respect to claims 8 and 12, Taylor Made's proposed rejections relied on Reynolds, Jr. for disclosure of a weight press fitted to the shell.

As explained, Reynolds, Jr. teaches that its weights 41 are sized to fit "snugly but smoothly" within the weight recesses 47 in the golf club head. (A0029, 3:52-55 & 4:3-14; A0025-26, Figs. 2-3.)  Reynolds, Jr. further discloses that each retaining bolt 42 "moves freely through a non-threaded weight bore 45 and engages a threaded recess 43 in the center of the weight recess 47 drawing the weight into a rigid secure position within the recess."  (A0029, 4:7-10.)

Taylor Made explained that Reynolds, Jr. discloses press fitted weights that are also secured in place by bolts, and that it would have been obvious to substitute those weight-bolt assemblies for the screws or other threaded members used for weights in Parente and Glover.  This is a simple substitution of one known element (press fitted weights and bolts) for another (weight screws) to obtain a predictable result (weights held snugly and securely in place).

As noted, although the examiner initially adopted Requestor's proposed rejection of claims 8 and 12 and found that <u>Reynolds, Jr.</u> discloses press fitting, the examiner reversed her decision in the ACP. (A0273-275.) On appeal, the Board agreed with the examiner, refusing to find that <u>Reynolds, Jr.</u> teaches press fitted weights. The Board stated that it declined to alter its "interpretation of the meaning of the term 'press fit' itself to include the snug but removable fit, as in the weights disclosed in Reynolds, Jr." (A0347.) For the reasons discussed below, the Board is incorrect.

1.  <u>Reynolds, Jr. discloses press fitted weights that are user-attachable and detachable</u>

Since the weights 41 in <u>Reynolds, Jr.</u> are "snug" (*i.e.*, close fitting), it naturally follows that there is at least some friction between the weights and the golf club head, such that the weights must literally need to be "pressed" into place with some degree of force. <u>Reynolds, Jr.</u> also teaches that the weights 41 are user-attachable and detachable. (A0029, 4:1-13.)

While <u>Reynolds, Jr.</u> does not use the term press fit to describe the weights 41, the disclosure indicates that the weight is "press fit" within the recess 47 in the sense contemplated by the '450 patent:

> Various strategies may be used to releasably secure the removable weights 41 within the putter head. FIG. 2 and 2A show an embodiment of a weight attachment. A weight 41 having flat top and a downward extending

> cylindrical portion with a central bore 45 is appropriately
> sized to fit snugly but smoothly within the weight
> recess 47 within the golf head 11.  A retaining bolt 42
> moves freely through a non-threaded weight bore 45 and
> engages a threaded recess 43 in the center of the weight
> recess 47 ***drawing the weight into a rigid secure position***
> ***within the recess***.

(*Id.*, 4:1-10.)  The fact that a bolt is used to draw the weight 41 into position in the

weight recess 47 strongly implies that there is some frictional interference between

the two parts.  If there were no such interference, the weight would fit in the recess

without any need to be drawn into it with the bolt.

Reynolds, Jr.'s use of the term "press fit" in other parts of the

specification does not change the result.  (*See* A0028, 2:35-37 ("The weight may

be altered during manufacturing by introducing different press fit substances into

the body of the putter head…"); A0029, 3:55-59 ("As shown in FIG. 3 and 3A, the

base weight of the head may also be adjusted by press fitting different weighing

substances 46 into the rear surface 16 of the head during manufacturing."); *id.*,

4:38-40 ("Typically, the percussion insert is a cylindrical plug that will be press

fitted into the club head 11 during manufacturing.")  In each case, Reynolds, Jr.

describes weights that are permanently press fit ***during manufacturing***, with no

expectation that the weights can be attached or detached by the user after

manufacture.  The most that one can conclude is that Reynolds, Jr. was using

"press fit" in the narrow sense of a manufacturing process designed to permanently

assemble components together, not in the sense intended in the '450 patent of weights that are user-attachable and detachable after manufacture.

As discussed above, it is also irrelevant that <u>Reynolds, Jr.</u>'s weight 41 is held in place by the screw 42 because claims 8 and 12 are open-ended "comprising" claims and do not require that press fitting be the sole means by which the weights are secured to the shell. Further, as discussed *supra*, <u>Parente</u> itself is a teaching that use of screws to secure a component in place is not inconsistent with the component also being press fitted. Thus, the fact that each of <u>Reynolds, Jr.</u>'s weights 41 is also held in place by a screw fails as evidence that the weights are not press fitted.

2. <u>Alternatively, it would have been obvious to modify Reynolds, Jr. to make the weights press fitted</u>

Regardless of whether <u>Reynolds, Jr.</u> intended the weights 41 to be press fitted, it would have been obvious to a person skilled in the art to press fit them. A similar issue arose in *Application of Dulberg*, 289 F.2d 522 (C.C.P.A. 1961). In *Dulberg*, the court agreed with the Board that the structure disclosed in a prior art patent to Peterson "fully meets the terms of the appealed claims if the cap which is said to be 'press fitted' is removable." *Id*. at 523. The Patent Owner argued that "in a press fit the parts fit so tightly that they cannot be manually removed." *Id*. The court held that whether or not the cap was intended to be manually removable, it would have been obvious to make it removable:

-43-

> If it were considered desirable for any reason to obtain access to the end of Peterson's holder to which the cap is applied, it would be obvious to make the cap removable for that purpose. That could be done by anyone having the ordinary skills of this art simply by making the fit sufficiently loose to permit the ready manual removal of the cap. No specific prior art teaching would be necessary to show that operation.

*Id. See also Perfect Web Techs, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1389-29 (Fed. Cir. 2009) (holding that it is proper "to rely on 'common knowledge and common sense of the person of ordinary skill in the art without any specific hint or suggestion in a particular reference'") (quoting *In re Bozek*, 416 F.2d 1385, 1390 (Fed. Cir. 1969)).

Similarly, if the weights 41 in <u>Reynolds, Jr.</u> are not deemed to be press fitted, the decision whether to press fit them depends on whether it is desired to make the weights fit more securely in the golf club head. As noted, the Patent Owner's declarant acknowledged that "screws can work loose" (A0143, ¶ 69), which provides the "rational underpinnings" that the Board mistakenly concluded were missing in the evidence (A0347). Given this commonly understood concern that "screws can work loose," it would have been obvious to make the weights slightly larger, but still fit sufficiently loose to allow them to be "user-attachable and detachable." Such a modification could have been done by anyone of ordinary skill in the art and no prior art teaching would be necessary.

Reynolds, Jr. discloses a putter, which in normal use is not intended to be swung with great force or velocity—though clearly there is always the possibility that someone will swing a putter vigorously, whether doing so to warm up, playfully, or otherwise. To paraphrase the court in *Dulberg*, if it were considered desirable for any reason to make the weights more secure—for the foregoing reasons or perhaps to apply Reynolds, Jr.'s teachings to a driver, which is intended to be swung with great force and velocity—it would have been obvious to make the weights slightly larger for a tighter fit to reduce the serious risk of injury from a weight flying off. The court's statement that "[n]o specific prior art teaching would be necessary to show that operation" (289 F.2d at 523) is as true today as it was 50 years ago when *Dulberg* was decided. [7] As the Supreme Court stated in *KSR*, 550 U.S. at 416 (2007), "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." And, in the case of simple mechanical inventions, trying a particular solution may just be common sense. *Id*.

Accordingly, if Reynolds, Jr. is found not to teach press fitting, it would have been obvious to a person skilled in the art to modify Reynolds, Jr. to

---

[7] *Dulberg* itself stands for a teaching, if one were needed, that press fitted parts can be designed either so tightly that they cannot be manually removed or sufficiently loose to permit manual removal.

press fit the weights 41 in a golf club head.

3.    Claims 8 and 12 are invalid under Ground Nos. V and VII

The Board correctly determined that claims 1 and 10, from which

claims 8 and 12 depend, are invalid as obvious over Parente in view of Glover.

The Board also correctly determined that claims 1 and 10 are invalid under

35 U.S.C. § 103(a) as obvious over Parente in view of Glover, Ellingham, Ahn,

Sillers, and Dammen.  Thus, with respect to claims 8 and 12, the only issue on

appeal, and the only issue standing in the way of an obviousness determination, is

whether Reynolds, Jr. teaches and renders obvious press fitting weights to the

shell.

As discussed above, Reynolds, Jr. either teaches press fitting weights

or it would have been obvious to make the weights slightly larger for a tighter fit.

Therefore, claims 8 and 12 are invalid as obvious over the prior art.  There is

nothing in the Board's decision or in the record, including any evidence or

arguments of secondary considerations, that mandates a different result.

Accordingly, Taylor Made requests the Court to hold that claims 8

and 12 are invalid as obvious over Parente in view of Glover and Reynolds, Jr.

(Ground No. V) and invalid under 35 U.S.C. § 103(a) as obvious over Parente in

view of Glover, Ellingham, Ahn, Sillers, Dammen, and Reynolds, Jr. (Ground

No. VII).

# VIII.
## CONCLUSION

For the foregoing reasons, the Court should overrule the Board's interpretation of claims 8, 9, 12 and 13 of the '450 patent and hold that these claims are invalid under Ground Nos. III and V-VII.

Dated: January 10, 2014

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

BRIDGETTE A. AGNESS
Attorneys for Appellant
Taylor Made Golf Company, Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 11,012 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (year) in 14-point Times New Roman font.

Dated: January 10, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

BRIDGETTE A. AGNESS
Attorneys for Appellant
Taylor Made Golf Company, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2014, I electronically filed the foregoing CORRECTED APPELLANT'S BRIEF using the Court's CM/ECF filing system.

_____
Betty I. Rodriguez

**ADDENDUM**

# ADDENDUM - TABLE OF CONTENTS

**Page**

Decision on Appeal…..………………………………………………………AD1

Decision on Request for Rehearing...…………………………………………AD28

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,378 | 10/09/2008 | 7344450 | 0EKM-136247 | 8212 |

50086          7590          08/30/2012

LAW OFFICE OF DAVID H. JUDSON
15950 DALLAS PARKWAY
SUITE 225
DALLAS, TX 75248

| EXAMINER |
|---|
| WEHNER, CARY ELLEN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/30/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

———————

Taylor Made Golf Company, Inc.
Requester and Cross-Appellant

v.

Dogleg Right Corporation
Patent Owner and Appellant

———————

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2
Technology Center 3900

———————

Before JENNIFER D. BAHR, JEFFREY B. ROBERTSON, and
DANIEL S. SONG, *Administrative Patent Judges*.

ROBERTSON, *Administrative Patent Judge*.


DECISION ON APPEAL

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2


Patent Owner Dogleg Right Corporation ("Patent Owner") appeals under 35 U.S.C. §§ 134(b) and 315(a) the Examiner's decision to reject claims 1-7, 10, 11, and 14-18.[1] Third-Party Requester Taylor Made Golf Company, Inc. (hereinafter "Requester") urges that the Examiner's decision must be affirmed.[2] Requestor also cross-appeals under 35 U.S.C. §§ 134(c) and 315(b) from the Examiner's refusal to reject claims 4, 8, 9, 12, and 13 on additional grounds.[3] We have jurisdiction under 35 U.S.C. §§ 134(b)-(c) and 315(a)-(b). We affirm the Examiner's decision to reject claims 1-7, 10, 11, and 14-18. We also affirm the Examiner's decision not to reject claims 4, 8, 9, 12, and 13 on additional grounds.


STATEMENT OF THE CASE

United States Patent 7,344,450 B2 (hereinafter the "'450 Patent"), which is the subject of the current *inter partes* reexamination, issued to David P. Billings on March 18, 2008. The '450 patent claims to be a continuation of United States Patents 7,189,169 B2 (hereinafter the "'169 Patent") and 7,004,852 B2 (hereinafter the "'852 Patent"), which are the

---

[1] *See* Patent Owner's Appeal Brief 2 (filed August 11, 2011) (hereinafter "PO App. Br."); Examiner's Answer (mailed January 24, 2012) (hereinafter "Ans."); Right of Appeal Notice (mailed May 12, 2011) (hereinafter "RAN.").

[2] *See* Requester's Respondent Brief (filed September 7, 2011) (hereinafter "Req. Resp. Br.").

[3] *See* Requester's Appeal Brief 3 (filed August 10, 2011) (hereinafter "Req. App. Br."), Requester's Rebuttal Brief (filed February 23, 2012) (hereinafter "Req. Reb. Br.").

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

subject of *inter partes* reexamination control nos. 95/000,362 (Appeal No.
2012-005168) and 95/000,361 (Appeal No. 2012-005164), respectively.

We have also been informed that the '852, '169, and '450 Patents
were the subject of litigation styled *Dogleg Right Partners, LP et al. v.
TaylorMade Golf Company, Inc. et al.*, Civil Action No. 2:07-CV-533
(TJW-CE), U.S. District Court for the Eastern District of Texas, in which the
Court entered judgment of non-infringement (PO App. Br. 1; Req. App. Br.
2.),[4] and which was affirmed by the Court of Appeals for the Federal Circuit
(No. 2011-1537). *Dogleg Right Partners, LP v. TaylorMade Golf Company,
Inc.*, 2012 WL 2308117 (Fed. Cir. 2012).

Oral arguments from both Patent Owner and Requester were heard in
this appeal on May 2, 2012, a transcript of which having been entered into
the electronic record on June 5, 2012.

The '450 Patent relates to a method of adjusting a center of gravity of
a golf club head. Claim 1, which is illustrative of the appealed subject
matter, reads as follows:

> 1. A method for adjusting a center of gravity of a golf
> club head after its manufacture, the golf club including a head
> comprising a hollow shell having a plurality of thin walls that
> collectively form a club head, the club head including a face for
> striking a golf ball, a heel portion, a toe portion, a back portion
> and a sole and having an original center of gravity prior to
> addition of any weights, the club head further including a
> plurality of user-attachable and detachable, discrete weights
> arranged on the shell at spaced-apart locations, the method
> comprising:

---

[4] The District Court did not consider issues of invalidity. (Resp. Br., Ex. 3,
p. 2.)

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

> hitting golf balls with the club with the plurality of weights detachably secured to the shell in a first arrangement, in which the plurality of weights are positioned in at least two locations other than the sole, permitting movement of the center of gravity of the club head from the location of the original center of gravity toward the club face, wherein the sole is formed of one or more substantially planar surfaces at the bottom of the club head facing downwardly; and

> after hitting golf balls with the club, forming a second arrangement with the plurality of weights detachably secured to the shell, the second arrangement moving the golf club head center of gravity forward of the original center of gravity in the general direction of a first axis extending between the face and back portion of the head and in the general direction of a second axis extending between the heel and the toe portions.

(PO App. Br. 25 Claims App'x.)

Patent Owner contests the Examiner's decision to reject the claims as follows:

I.  Claims 1-7, 10, 11, and 14-18 under 35 U.S.C. § 103(a) as obvious over Parente (U.S. Patent 5,911,638, issued June 15, 1999) in view of Glover (U.S. Patent 3,652,094, issued March 28, 1972); and

II. Claims 1-7, 10, 11, and 14-18 under 35 U.S.C. § 103(a) as obvious over Parente in view of Ahn (U.S. Patent 6,015,354, issued January 18, 2000), Glover, Ellingham (U.S. Patent 1,518,316, issued December 9, 1924), and Dammen (WO 01/66199 A1, published September 13, 2001).

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

Requester contests the Examiner's decision not to reject the claims as follows:

III.  Claims 8, 9, 12, and 13 under 35 U.S.C. § 103(a) as obvious over Parente in view of Glover;

IV.  Claim 4 under 35 U.S.C. § 103(a) as obvious over Parente in view of Glover, Reynolds Jr. (U.S. Patent 5,746,664, issued May 5, 1998), and Ellingham;

V.  Claims 8 and 12 under 35 U.S.C. § 103(a) as obvious over Parente in view of Glover and Reynolds Jr.;

VI.  Claims 8, 9, 12, and 13 under 35 U.S.C. § 103(a) as obvious over Parente in view of Glover, Ellingham, Ahn, Sillers (US 2002/0128089 A1, published September 12, 2002), and Dammen; and

VII.  Claims 4, 8, and 12 under 35 U.S.C. § 103(a) as obvious over Parente in view of Glover, Ellingham, Ahn, Sillers, Dammen, and Reynolds Jr.

PATENT OWNER'S APPEAL OF ADOPTED REJECTIONS

*Rejections I and II*

*Claim 1*

ISSUE

The Examiner found that the object of Parente is to provide a golf club head with adjustable weighting in order to meet the requirements of a

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

particular user, where the center of gravity (COG) is inherently moved with each adjustment of weights. (RAN 7.) Regarding the limitation in claim 1, that the weights be located in at two locations other than the sole, the Examiner found that Glover discloses that weights may be positioned in golf club heads at locations other than the sole. (RAN 7, 20-21.) Similarly, the Examiner found that Ellingham, Ahn, Dammen all disclose locations of weights in golf club heads other than the sole. (RAN 11-12, 24-25, 25-28.) The Examiner concluded that it would have been obvious to have provided the golf club head of Parente with weights at locations other than the sole as taught by Glover, Ahn, Ellingham, and Dammen in order to allow for more weight and balance configurations in the golf club head. (RAN 7, 12.) The Examiner also concluded that in view of Parente and Glover, it would have been obvious to hit golf balls and then adjust weight locations until the weight and balance of the golf club head are satisfactory for a given user's specific requirements, and that shifting the COG of the golf club head would lead to the well-established advantage of increasing distance of the ball. (RAN 7, 21.)

Patent Owner contends that the Examiner fails to provide a claim construction, and as a result, the Examiner erred in rejecting the claims. (PO App. Br. 5-6.) Specifically, Patent Owner contends that the claims require that movement of the center of gravity takes place in two directions, where the center of gravity is moved forward and either toward the heel or the toe. (PO App. Br. 6-7.)

Patent Owner argues that Parente does not explicitly disclose the ordered steps recited in the claims, because Parente discusses the swing

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

weight of the golf club, which does not necessarily translate into hitting balls
to achieve a result, but only describes the benefits of system in general. (PO
App. Br. 9-10.) Patent Owner also argues that Parente does not disclose
moving COG toward club face, and that the Examiner relies on two mutually
exclusive embodiments of Glover to reach this limitation. (PO App. Br. 10-
11, 18.) Thus, Patent Owner contends that there is no teaching to shift COG
both toward face and to either heel or toe (a diagonal shift) as required by
the claims. (PO App. Br. 11-12.)

Patent Owner also argues that Ellingham, Ahn, and Dammen are
cumulative. (PO App. Br. 16-17.) Specifically, Patent Owner contends that
Ahn does not provide diagonal COG movement, but only movement along
the heel to toe axis. (PO App. Br. 18.) Patent Owner additionally argues
that Ellingham discloses placing weights in bores, and thus cannot disclose a
diagonal shift. (PO App. Br. 19.) Similarly, Patent Owner contends that
Dammen does not disclose moving weights in a second axis. (PO App. Br.
19.)

Requester argues that there is no evidence that the Examiner
misinterpreted the claims. (Req. Resp. Br. 5.) Requester contends that
explicit description of method steps is unnecessary, as the '450 Patent itself
does not disclose the steps in the claim, and that with respect to the method
steps, Parente actually discloses more than the '450 Patent. (Req. Resp. Br.
6-7.) Requester argues that the Examiner's rationale is not based on the
particular weight system disclosed in Glover, but on Glover's disclosure of
the location of the weights. (Req. Resp. Br. 8-9.)

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

Accordingly, the dispositive issue on appeal is: Does Parente in view of Glover, Ellingham, Ahn, and Dammen disclose or render obvious the claimed method reciting the ordered steps?

## FINDINGS OF FACT ("FF")

1.    Parente discloses a golf club head that allows the weight distribution in the head to be adjusted by providing screws of different weights at different locations of the club head. (Col. 1, ll. 5-7, col. 2, ll. 3-23.)

2.    Parente discloses that "by using heavier screws at the heel, toe, or rear, weight can be selectively adjusted from toe to heel or front to back of the club head, as desired for the particular golfer." (Col. 2, ll. 20-23.)

3.    Parente discloses that the center of gravity, the size of the sweet spot, the overall feel and playing characteristics including launch angle may be adjusted by using different weights at different positions according to "an individual player's style." (Col. 4, ll. 21-33.) According to Parente, "[i]f the club does not feel quite right to a player, they can easily adjust one or more of the screw weights until they are happy with the club performance." (Col. 4, ll. 23-26.)

4.    Parente discloses that although three screws are exemplified in the illustrated embodiments, "a greater number of screws maybe used in alternative embodiments, simply by providing additional threaded openings . . . ." (Col. 4, ll. 64-67.)

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

5. Glover discloses a golf club head where the swing weight and/or balance may be adjusted by placing weighted plugs in locations in the striking face and sole of a club head. (Col. 2, l. 38 – col. 3, l. 9, Figs. 1 and 2; col. 3, ll. 49-61, Figs. 7 and 8.)

6. Ellingham discloses a golf club head where the weight may be adjusted based on the requirements of the user, where the weights may be located in the striking face of the golf club head. (Page 1, ll. 12-17, 84-92; Figs. 1 and 2.)

7. Ahn discloses an adjustable golf club head where the weights may be placed at locations other than the sole of the club to suit a player's physical characteristics and ability. (Col. 1, ll. 5-14; Figs. 20 and 24.)

8. Dammen discloses a golf club head with an adjustable weighting system where the weights are located at positions other than the sole. (Page 1, ll. 2-4; Figs. 1-7.)

PRINCIPLES OF LAW

A prima facie case of obviousness is established where the Examiner demonstrates that the invention is nothing more than the predictable result of a combination of familiar elements according to known methods. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416-17 (2007). "[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.* at 417.

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

ANALYSIS

At the outset, we do not subscribe to Patent Owner's view that the Examiner erred in not providing an express claim construction of the claims on appeal. Examiners are not required to provide an on the record claim construction of every term in every rejected claim. *In re Jung*, 637 F.3d 1356, 1363 (Fed. Cir. 2011). In this regard, the Examiner adequately identified the references relied upon and provided a sufficient articulation of the rejection in order to meet the notice requirement set forth in 35 U.S.C. §132. *See Id.*

Specifically, regarding the steps recited in claim 1, namely, hitting golf balls with a plurality of weights detachably secured to the shell in a first configuration and then after hitting golf balls with the club, forming a second arrangement with the plurality of weights detachably secured to the shell, the Examiner addressed these steps, stating "it would have been obvious to one of ordinary of skill in the art to hit golf balls with the weights in various configurations . . . until the desired weight and balance are satisfactory." (RAN 7.) Implicit in the Examiner's rationale is that the recited method steps, where the weights are present in the golf club head in a first configuration when the golf balls are hit, and then changes in the weight configurations are made in response to the results of hitting the golf balls, are performed in order to determine the "desired weight and balance" of the particular user. In addition, the method steps recited in the claims are clearly set forth such that we do not discern any terms therein that would have

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

required a claim construction.[5]  Therefore, we are unpersuaded that the method steps recited in the claims require an express claim construction by the Examiner.

We are also unpersuaded by Patent Owner's argument that the steps of the recited method are not disclosed or suggested by Parente.  (PO App. Br. 9.)  Parente discusses adjusting the center of gravity, the overall feel, the sweet spot, and launch angle to an individual player's style, and further points out that the player can adjust the weights until they are happy with the club performance.  (FF 1, 3.)  From this disclosure, it naturally follows that the individual player would necessarily have to hit golf balls with the weights in one configuration and then adjust weights to a different configuration in order to determine whether the feel and ball flight characteristics are optimized for the individual player's style and, specifically, whether they are happy with the club performance.

Patent Owner's other contention with respect to claim construction relates to the direction of weight movement in the second arrangement relative to the first arrangement, where such movement requires moving the center of gravity in two directions.  (PO App. Br. 6.)  We are not persuaded that the Examiner erred in not providing an express construction of this claim limitation.  In rejecting the claims, the Examiner found that the head disclosed in Parente "inherently has a first axis between the heel and toe portions and a second axis extending between the front and back of the head."  (Ans. 6-7.)  The Examiner found that the object of Parente is to

---

[5] Indeed, we additionally note as did the Requester, that the Specification of the '450 Patent does not expressly contain a description of the method steps recited in the claims.

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

provide a golf club head with adjustable weighting to adjust for user specific requirements. (Ans. 7.) Indeed, Parente expressly discloses that the weights may be moved from both toe to heel and front to rear of the club head. (FF 2.) The "diagonal movement" of the center of gravity falls within the Examiner's rationale that the center of gravity would have been adjusted to the specific requirements of the user, including movement of the center of gravity forward in the general direction of the first axis and also in a direction of the second axis between the heel and toe portions. (Ans. 7.) Thus, the Examiner's rejection sufficiently provided notice to Patent Owner as to how the claims were being rejected.

We are also not persuaded by Patent Owner's second argument that the Examiner has combined two mutually exclusive embodiments of Glover. As both the Examiner and Requester point out, the rejection is not based on bodily incorporating the weight system of Glover into Parente, but rather the general concept that weights may be located other than at the sole. Patent Owner has not provided any persuasive evidence that the Examiner's suggested modification of Parente would have been beyond the capabilities of one having ordinary skill in the art. Similarly, Ahn, Ellingham, and Dammen provide evidence that it was well-known in the art of golf club heads having adjustable weights, to locate the weights in places other than in the sole of the golf club head. (FF 5-7.)

We are further unpersuaded by Patent Owner's third argument that the Examiner engaged in a hindsight analysis in order to reach the claims. In this case, the Examiner's rationale is not based on Patent Owner's disclosure, but rather is based on the known effects of adjustable weights in

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

golf clubs, where the recited movement in two directions would be achieved in adjusting the center of gravity based on an individual golfer's preferences. Accordingly, we are not persuaded that the prior art fails to teach or suggest moving the center of gravity forward of the original center of gravity in the general direction of a first axis and also in the general axis extending between the heel and toe portion, as such movement would depend on the preferences of an individual golfer. Thus, we discern no error in the Examiner's analysis.

*Claim 2*

ISSUE

Claim 2 recites that the step of forming the second arrangement of weights further includes "moving the golf club head center of gravity in the general direction of a third axis extending between the golf club head sole and the top." The Examiner's position is that the language of claim 2 is unclear, but in view of the '450 Specification, the claim means that the center of gravity is moved toward the sole or top, which Parente discloses by using longer or shorter weights, and which Glover teaches by placing weights at different heights in the golf club head. (RAN 7-8, 21-22.)

Patent Owner contends that Parente only discloses adjusting the center of gravity across club head, not up or down and that the Examiner's finding to use longer or shorter screw would add additional weight and an unwanted fourth center of gravity shift. (PO App. Br. 13.) In addition, Patent Owner argues that Glover does not teach moving center of gravity as an active operation. (PO App. Br. 13-14.)

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

Requester argues that Parente does not disclaim the ability to alter weights up or down. (Req. Resp. Br. 11.) In addition, Requester contends that using longer screws instead of shorter screws as suggested in Parente would inherently move the center of gravity upward, forward and toward the toe. (Req. Resp. Br. 11.) Requester also argues that Glover discloses arrangements of weights that would permit movement of the center of gravity in all three directions in claim 2 (in view of claim 1.) (Req. Resp. Br. 11.)

Thus another issue on appeal is: Does Parente in view of Glover disclose or render obvious the claimed method which includes moving the golf club center of gravity in the general direction of a third axis extending between the golf club head sole and top?

## ANALYSIS

We are not persuaded by Patent Owner's argument that Parente in view of Glover fails to disclose or suggest the method of claim 2.

Specifically, we do not discern any factual errors underlying the Examiner's obviousness analysis. Even assuming Patent Owner is correct that the weight of any screw would be skewed downward as a result of the screw head regardless of the screw's length, a corollary to Patent Owner's theory is that weight would be skewed downward to a different extent in a longer screw than in a shorter screw due to the increase in mass at the threaded end of the screw as a result of the additional length. Thus, Patent Owner has not adequately explained why the center of gravity could not

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

have been adjusted between the sole and the top of the club using a different length of screw.

In addition, Patent Owner's arguments regarding Glover merely focus on Glover's failure to disclose moving the COG in accordance with the recited method. However, the Examiner does not rely on Glover for the method recited in the claims, but rather for the knowledge that weights may be placed at different heights in adjusting the weight of the club head. (RAN 8, 20-21.) In effect, Patent Owner has argued against the teachings of Parente and Glover individually, and not what one of ordinary skill in the art would have gleaned from considering the teachings in both of those references.

As to the Patent Owner's argument that there would be an "unwanted" shift in a fourth direction of the center of gravity, Patent Owner does not direct our attention to persuasive evidence to support the position that such adding of additional weight would cause such a shift of the center of gravity so as to dissuade a person of ordinary skill, or that any such shift cannot be offset, for example, through adjusting the placement of other weights. Further, claim 2 does not prohibit additional shifts in the center of gravity as both claim 1 and claim 2 allow for the presence of additional shifts by virtue of the open transitional phrases used in the claims.

*Claim 3*

ISSUE

Claim 3 depends from claim 1 and further recites that the step of forming the second arrangement of the plurality weights further comprises

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

"removing a member secured to a port formed into the shell." The
Examiner's position is that Parente discloses detachable member (sole plate)
12, which is removed when all of the screws are removed to form a second
arrangement. (RAN 8, 23.)

Patent Owner contends that Parente discloses that the sole plate is
retained in a recess while the screws are changed, and therefore the sole
plate is not removed in the course of forming a second arrangement as
recited in claim 3. (PO App. Br. 15, 22-23.)

Requester argues that Parente does not require the sole plate to be kept
in place, but that the sole plate is releasable such that removing the sole plate
is optional and would have been obvious for example, to clean debris and
remove moisture from inside the club head. (Req. Resp. Br. 13.)

Therefore, an additional issue is:

Does Parente disclose or render obvious a method in which a
detachable or removable member is removed as in claim 3?

## ADDITIONAL FINDINGS OF FACT

9. Parente discloses that the weight adjustment screws secure the
   sole plate to the body of the club head and further that
   "[p]referably, interlocking formations are provided for
   releasably holding the sole plate in position as the screws are
   secured." (Col. 4, ll. 34-38.)

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

## ANALYSIS

We agree with the Examiner and Requester that Parente suggests removing a member secured to a port in forming a second arrangement. Although Parente discloses an embodiment where the sole plate remains attached to the port while the weights may be changed, Parente as a whole suggests that the sole plate may be removed when the weights are changed. Specifically, Parente broadly discloses that the weight adjustment screws have the function of securing the sole plate to the body of the club head where the interlocking formations provided for releasably holding the sole plate in position is merely a preferred embodiment. (FF 9.) Thus, one of ordinary skill in the art would have recognized that such requirements are not necessary to other embodiments of Parente's golf club head. Accordingly, in embodiments not containing elements to hold the sole plate in place, when all of the screws are removed to form a second arrangement, the sole plate may also be removed in arranging the weights, for example, to clean debris and remove moisture from inside the club head as articulated by the Requester. (Req. Resp. Br. 13.) Therefore, we are not persuaded by Patent Owner's arguments.

*Claim 10*

## ISSUE

Claim 10 recites that the step of forming a second arrangement of the plurality of weights includes "removably securing at least one of the plurality of weights within the opening and against the one or more internal walls of the shell opening to attenuate vibration of the weighted member."

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

The Examiner stated that Parente discloses weights located within a recess
that has threads to engage the threaded wall. (RAN 8, 12.)

Patent Owner contends that the Examiner does not construe the
limitation "attenuate vibration of the weighted member," nor does the
Examiner point to where in references the limitation is disclosed. (PO App.
Br. 15-16, 23-24.)

Requester contends that the Examiner has an obligation to make an on
record claim construction and further argues that one skilled in the art would
have understood that when secured in place, Parente's screws inherently
attenuate vibration. (Req. Resp. Br. 15-16.)

Therefore, a further issue on appeal is:

Does Parente in view of Glover disclose removably securing a weight
in order to "attenuate vibration of the weighted member" as recited in claim
10?

## ADDITIONAL FINDINGS OF FACT

10.    Parente discloses that weighted screws are secured within a
         recess that has an internally extending threaded wall, where the
         weighted screws engage threaded holes in the rim of the lower
         wall. (Col. 3, ll. 32-48.)

## ANALYSIS

We are unpersuaded by Patent Owner's arguments. In order to
"attenuate vibration of the weighed member," claim 10 recites that at least
one weight is secured within an opening within the shell against one or more

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

internal walls of the shell. Similarly, Parente discloses that removable
weighted screws are secured within a recess that has an internally extending
threaded wall, where the weighted screws engage the threaded wall. (RAN
8, FF 10.) Thus, the Examiner provided factual findings for the recited
method steps necessary to attenuate the vibration of the weighted member.
Patent Owner has provided no substantive argument as to why the
arrangement in Parente would not have necessarily resulted in the vibration
of the weighed member being attenuated. Regarding Patent Owner's
argument that the Examiner did not construe this limitation, as discussed
above, the Examiner is not required to provide a construction of every claim
limitation, particularly where the application of the prior art to the claim
limitation is clear.[6] Accordingly, the Examiner did not err in rejecting claim
10.

## REQUESTER'S APPEAL OF NON-ADOPTED REJECTIONS
### *Rejections III and V*
### ISSUE

Regarding Rejection III, the Examiner did not adopt the proposed
rejection of claims 8, 9, 12, and 13 as obvious over Parente in view of
Glover because in the Examiner's view, the sole plate 12 of Parente cannot
be considered a weight and cannot be used to adjust the center of gravity.
As a result, the Examiner stated that Parente does not teach weights that are
press-fitted or latched. (RAN 9, 22.) Regarding Ground V (claims 8 and

---

[6] We additionally observe that the '450 Patent provides no additional
description of this limitation beyond what is recited in the claims.

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

12), the Examiner further stated with regard to Reynolds, Jr. the snug fit disclosed therein is not necessarily a press fit as recited in the claims. (RAN 10, 23-24, 28.)

Requester contends "press fitting" and "latches" as recited in claims 8 and 9 should be interpreted broadly to include indirect press fitting or latching, as the '450 Patent only mentions press-fitting or latching with respect to the cover to close the opening of the club head body. (Req. App. Br. 6-8.) Requester contends that in tightening the screws, the screws inherently compress the sole plate, resulting in a frictional engagement of the screws to the sole plate in Parente, which constitutes a press-fitted or latched weight under the broadest reasonable interpretation of the claims. (Req. App. Br. 9-11.) Requester argues that in order to satisfy the claims, the press fitting need not be the only means of attachment, such that the threading of screws does not affect how the arrangement in Parente would meet the claims. (Req. App. Br. 11.)

Requester argues that because the user must be able to attach and detach weights, the press-fitting recited in the claims cannot be done tightly by machine, and the '450 Patent does not disclose a tool to aid in press-fitting, such that there is no basis to conclude that the snug fit in Reynolds, Jr. is patentably distinct from the recited press fit. (Req. App. Br. 17-18.) Requester also proposed that it would have been obvious to make the weights loose to allow them to be attached and detached. (Req. App. Br. 18-19.) Requester contends that Reynolds, Jr. in disclosing weights that have a snug fit, discloses that the weights must be pressed into place with some degree of force, which would be included in the claim term "press-fitting"

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

when it is accorded its broadest reasonable interpretation. (Req. App. Br. 17-18.) Thus, Requester stated that it would have been obvious to substitute the known elements of Reynolds Jr. for other threaded members and weights in Parente and Glover. (Req. App. Br. 14-15.) Requester also contends that it would have been obvious to have made the weights of Reynolds, Jr. slightly larger, but still sufficiently loose to allow them to be user-attachable and detachable. (Req. App. Br. 18-19.)

Patent Owner argues that it is improper to interpret claims as encompassing indirect press-fitting, because the plain meaning of press-fitting does not require that the press-fitting be indirect. (PO Resp. Br. 4-5.) Patent Owner also contends that Parente's sole plate is not removed when screws are changed. (PO Resp. Br. 5.) Patent Owner also argues that Requester's position in which press fitting and latching are equated to frictional engagement is not supported by evidence. (PO Resp. Br. 5-6.)

Patent Owner contends that Reynolds, Jr. only discloses that removable weights are secured by a retaining bolt. (PO Resp. Br. 7.) Patent Owner also argues that there is no indication that the Examiner failed to give the claims a proper interpretation. (PO Resp. Br. 8.) In addition, Patent Owner argues that the snug fit disclosed in Reynolds does not mean that the weights are press-fit. (PO Resp. Br. 9.)

Thus, the issue on appeal is: Did the Examiner err in concluding that the combination of Parente, Glover, and Reynolds, Jr. fails to render obvious press-fitting at least one of a plurality of weights to the shell?

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

## ANALYSIS

We are substantially in agreement with the Examiner and Patent Owner, that Parente alone or in view of Reynolds, Jr. fails to disclose or suggest press-fitting or latching at least one weight to the shell of a golf club head. Initially, we observe that the terms "press fitting" and "latches" are not defined in the Specification of the '450 Patent. Thus, we interpret the claims based on the ordinary and plain meaning of the terms. The Piotrowski Declaration presented by Patent Owner offers what appear to be the only definitions of these terms on the record, namely that a "press fit" is "an interference fit formed by pressing, or forcing one component into another," and a "latch" is "a structure that slides, snaps, or is spring into place to hold by a tab or hook position a component in place." (Declaration of Peter Piotrowski dated July 2, 2009, Para. 69, 70.)

While Requester suggests that the term "press fit" should be interpreted to include indirect press-fitting of a cover including lead tape to the shell of the golf club head as well as weights that are "pressed on" to the shell of a golf club head, we do not agree that such an interpretation is consistent with the broadest reasonable interpretation of the claims. Regarding Requester's indirect press-fitting arguments, we do not agree that the description of the different means of attachment of the cover to the golf club head in the '450 Patent is relevant to a claim limitation relating to the attachment of the weights to the golf club head. In addition, the '450 Patent does not contain any particular requirement that the weights be user attachable and detachable in any particular manner, i.e., without the use of a tool, that would require a special definition of "press fitting." Therefore, we

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

discern no reason to interpret "press fitting" as recited in the claims to include situations where the weights are "pressed on" to the golf club head, where such an interpretation would be contrary to the plain meaning of press fitting as being an interference fit.

As a result, we agree with the Examiner, that Parente and Reynolds, Jr. fail to disclose or suggest press-fitting weights to the shell as recited in claim 8. Further, Requester's statement that it would have been obvious to have made the weights in Reynolds, Jr. slightly larger is conclusory and does not set forth adequate rational underpinnings to support Requester's position.

Regarding the "latches" method of securing the weights recited in claim 9, Requester advances similar arguments with respect to the combination of Parente in view of Glover. (Req. App. Br. 10-11.) Because we conclude that claim 9 does not encompass indirect methods of latching the weights to the shell, we agree with Patent Owner that the Examiner did not err in withdrawing the rejection of claim 9 as obvious over Parente in view of Glover.

*Rejections IV and VII*

ISSUE

Claim 4 recites that the step of forming the second arrangement of the plurality of weights "further comprises removing, from a port formed into the shell, a member to which at least one of the plurality of weights is attached." Requester proposed additional rejections of claim 4 as obvious

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

over Parente, Glover, Reynolds Jr., and Ellingham or the combination of these references along with Ahn, Sillers, and Dammen.

In refusing to adopt these rejections, the Examiner stated that all of the features recited in claim 4 were already disclosed or suggested in the combination of Parente and Glover, such that there was no reason to further modify the combination with the additional cited references. (RAN 9.)

Requester contends that Ellingham and Reynolds, Jr. disclose the use of weights that are secured to the club head via screws or bolts, and that substitution of this configuration into the combination of Parente in view of Glover would have been obvious and yield predictable results. (Req. App. Br. 13-14.)

## ANALYSIS

We agree with the Examiner, that Ellingham and Reynolds, Jr. do not add anything to the Examiner's findings and reasoning supporting the conclusion that claim 4 would have been obvious over Parente in view of Glover as discussed above. Thus, we discern no reason to disturb the Examiner's decision not to adopt Requester's additional proposed rejections of claim 4.

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

*Rejections VI and VII*

Requester does not provide any additional arguments beyond those addressed above for Rejections VI and VII. (Req. App. Br. 19-21.) Accordingly, we affirm the Examiner's decision not to adopt Rejections VI and VII for the reasons discussed supra with respect to Rejections III-V.


DECISION

We affirm the Examiner's decision to reject claims 1-7, 10, 11, and 14-18. We also affirm the Examiner's decision not to reject claims 4, 8, 9, 12, and 13 on additional grounds.

In accordance with 37 C.F.R. § 41.79(a)(1), the "[p]arties to the appeal may file a request for rehearing of the decision within one month of the date of: . . . [t]he original decision of the Board under § 41.77(a)." A request for rehearing must be in compliance with 37 C.F.R. § 41.79(b). Comments in opposition to the request and additional requests for rehearing must be in accordance with 37 C.F.R. § 41.79(c) & (d), respectively. Under 37 C.F.R. § 41.79(e), the times for requesting rehearing under paragraph (a) of this section, for requesting further rehearing under paragraph (d) of this section, and for submitting comments under paragraph (c) of this section may not be extended.

An appeal to the United States Court of Appeals for the Federal Circuit under 35 U.S.C. §§ 141-144 and 315 and 37 C.F.R. § 1.983 for an *inter partes* reexamination proceeding "commenced" on or after November 2, 2002 may not be taken "until all parties' rights to request rehearing have been exhausted, at which time the decision of the Board is final and

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

appealable by any party to the appeal to the Board." 37 C.F.R. § 41.81. *See
also* MPEP § 2682 (8th ed., Rev. 7, July 2008).


<u>AFFIRMED</u>



PATENT OWNER:

LAW OFFICE OF DAVID H. JUDSON
15950 DALLAS PARKWAY, SUITE 225
DALLAS, TX 75248


THIRD-PARTY REQUESTER:

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
333 SOUTH HOPE STREET, 48TH FLOOR
LOS ANGELES, CA 90071

cu

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,378 | 10/09/2008 | 7344450 | 0EKM-136247 | 8212 |

50086        7590        04/30/2013

LAW OFFICE OF DAVID H. JUDSON
15950 DALLAS PARKWAY
SUITE 225
DALLAS, TX 75248

| EXAMINER |
|---|
| WEHNER, CARY ELLEN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/30/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

Taylor Made Golf Company, Inc.
Requester and Cross-Appellant

v.

Dogleg Right Corporation
Patent Owner and Appellant

————————

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2
Technology Center 3900

————————

Before JENNIFER D. BAHR, JEFFREY B. ROBERTSON, and
DANIEL S. SONG, *Administrative Patent Judges*.

ROBERTSON, *Administrative Patent Judge*.


DECISION ON REQUEST FOR REHEARING

Third-Party Requester Taylor Made Golf Company, Inc. (hereinafter "Requester") requests rehearing of our decision mailed August 30, 2012 (hereinafter "Decision"), in which we affirmed the Examiner's refusal to reject claims 8, 9, 12, and 13. (Third Party Requester Taylor Made Golf Company, Inc.'s Request for Rehearing under 37 C.F.R. § 41.79, hereinafter "Request" at 1.)

Requester contends that in interpreting claims 8, 9, 12, and 13, the Board misapprehended or overlooked the law, the disclosure of United States Patent 7,344,450 B2 (hereinafter the "'450 Patent"), the district court claim construction, and Requester's proposed construction of the term "press-fitting" as recited in claims 8 and 12. (Request 3.)

Additionally, Requester argues that the Board misapprehended Requester's unpatentability arguments with regard to the proposed rejections of claims 8, 9, 12, and 13 as obvious over Parente (U.S. Patent 5,911,638, issued June 15, 1999) in view of Glover (U.S. Patent 3,652,094, issued March 28, 1972) (Ground III); and Parente in view of Glover, Ellingham (U.S. Patent 1,518,316, issued December 9, 1924), Ahn (U.S. Patent 6,015,354, issued January 18, 2000), Sillers (US 2002/0128089 A1, published September 12, 2002), and Dammen(WO 01/66199 A1, published September 13, 2001) (Ground VI). (Request 3.)

Last, Requester contends that the Board misapprehended or overlooked Taylor Made's detailed explanation of why claims 8 and 12 would have been obvious over Parente in view of Glover and Reynolds Jr. (U.S. Patent 5,746,664, issued May 5, 1998) (Ground V); or Parente in view

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

of Glover, Ellingham, Ahn, Sillers, Dammen, and Reynolds Jr. (Ground VII). (Request 3.)

*Claim Construction*

Upon consideration of Requester's arguments, we agree that the broadest reasonable interpretation of "press fitting at least one of the plurality of weights to the shell" encompasses the two-step method disclosed in the Specification of the '450 Patent of attaching a weight to the surface of the member, and then securing the member to the shell by press-fitting, i.e., "indirect" press fitting. As pointed out by Requester, the '450 Patent discloses that the weighting port cover may be secured to the body by latches or press fits. (Col. 4, ll. 40-45.) The '450 Patent also discloses that weighting materials, such as lead tape, may also be placed on the weighting-port cover if desired. (Col. 5, ll. 45-48; col. 3, ll. 18-20.) Thus, claim 8 encompasses processes where the weighting material is attached to a member, and then the member is press fit to the club head, i.e., "indirect" press fitting. Similarly, the recitation in claim 9 that the method includes "securing at least one of the plurality of weights to the shell by one or more latches" encompasses processes in which the weighting material is attached to a member that is latched to the shell of the golf club.

While we agree with Requester that claim 8 should be interpreted to include the embodiments disclosed in the Specification of the '450 Patent, we decline to modify our decision to import a special meaning to the term "press fit" itself. That is, as we stated in the Decision, "'press fit' is 'an interference fit formed by pressing, or forcing one component into another,'

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

and a 'latch' is 'a structure that slides, snaps, or is spring into place to hold by a tab or hook position a component in place.' (Declaration of Peter Piotrowski dated July 2, 2009, Para. 69, 70.)" (Decision 22.) We decline to modify that interpretation.

Requester contends that it is unclear from the Decision whether we considered that the '450 Patent does not disclose a tool to aid in attaching or detaching a press fitted weight and that we misapprehended Requester's arguments in discussing that a weight which is "pressed on" to the golf club head is not "press-fit" to the golf club head. (Request 11-12, quoting Decision pp. 22-23.) We do not agree. As we clearly stated in the Decision, that the weights are user attachable and detachable, does not mean that such operations must be accomplished in any particular manner, such as without the use of a tool. (Decision 22.)

In this regard, we merely highlighted that there is no reason to interpret the term "press fit" to include situations where the engagement of the weight with the club head would be less than what would be understood from the plain meaning of the term, such as the "pressed on" pieces of lead tape. The point is that if "press fit" is not to be interpreted in accordance with its plain meaning, we have not been directed to persuasive evidence that would provide any boundary to the term where the type of engagement would not be considered "press fit," such as a weight that is "pressed on." Our position is that contrary to Requester's arguments, the plain and ordinary meaning of the term "press fit" is consistent with the Specification of the '450 Patent.

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

*Grounds III and VI*

Although we have interpreted "press fitting" in the claims to include indirect press fitting of weights to the extent disclosed in the '450 Patent, we decline to reverse our decision affirming the Examiner's refusal to reject claims 8, 9, 12, and 13 as set forth in Grounds III and VI. Claims 8, 9, 12, and 13 are all method claims, and while we have interpreted the claims to include indirect methods of press fitting, such as the two step method disclosed in the '450 Patent, we do not agree with Requester that "press fitting" weights to a golf club head as recited in claim 8, encompasses the method of attaching the weights to the golf club head disclosed in Parente.

Specifically, the Requester's argument is premised on the assertion that "the *frictional* engagement of Parente's sole plate and screw heads is *analogous* to the *adhesive* engagement between the lead tape and the port cover in the '450 patent." (Request 14, emphasis in original; *see generally* Request 13-15). However, we do not agree with Requester that this asserted "frictional engagement" between the screw (i.e., weight) and the sole plate is analogous to adhesively engaging (i.e., attaching by adhesive) a weight to the port cover, or that the arrangement of the screws in Parente can reasonably be considered as being indirectly press fitted. Parente discloses that a sole plate is attached in the recessed area of the lower wall of the golf club head by an interference fit (i.e., press fit) and then subsequently, screws are inserted through "through bores" in the sole plate into threaded openings in the heel, toe, and rear wall of the golf club head to further secure the sole plate to the golf club head. (Parente, Figs. 1, 3; col. 4, ll. 38-44, col. 3, ll.

33-48.)  Importantly, the "through bores" are not disclosed in Parente to be threaded, a point acknowledged by Requester.  (*Id.*; Request, 15, FN 6.)  Thus, the interface between the screw head and the sole plate is actually merely surface to surface contact, not an engagement in the sense of an attachment of those surfaces to each other as implied by the Requester's analogy.  The screws are attached to the shell of the golf club through the threaded engagement between the screws threads and the threads of the openings in the heel, toe, and rear wall of the golf club head.  The threaded engagement results in clamping loads that further secures the sole plate between the screw heads and the golf club head.  Accordingly, the interference fit between the sole plate and the golf club shell in Parente does not contribute in securing the weights to the shell as required by claim 8. Physical contact between surfaces of various components does not mean that it is correct or reasonable to consider such contacting components to be "indirectly press fitted" merely because one of such components is press fitted to another.

Thus, contrary to Requester's argument, it is very relevant that the through bores in Parente are not threaded, and results in the conclusion that the weighted screws of Parente are not indirectly press fit to the shell of the golf club as recited in claims 8 and 12.  For similar reasons, Parente does not disclose indirectly latching at least one of the plurality of weights to the shell of the golf club as required in claims 9 and 13.  Therefore, we decline to change our decision with respect to Grounds III and VI.

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

*Grounds V and VII*

Requester contends that we overlooked that Reynolds Jr.'s snug but removable fit is not patentably distinct from the press fitting as recited in claims 8 and 12 and that we overlooked Requester's detailed explanation of why it would have been obvious to press fit the weights of Reynolds, Jr. to a golf club head. (Request 16-19.)

As discussed above, we decline to alter our interpretation of the meaning of the term "press fit" itself to include the snug but removable fit, as in the weights disclosed in Reynolds, Jr. Thus, Requester's arguments in this regard are not persuasive.

We are also unpersuaded by Requester's second argument that it would have been obvious to increase the size of the weights of Reynolds, Jr. in order to make the weights more secure. That is, we stand by our reasoning in the Decision that such a modification lacks rational underpinnings. (Decision, p. 23.) Specifically, Reynolds, Jr. discloses that a retaining bolt is used to attach the weights to the golf club head. (Col. 4, ll. 1-15; Fig. 2.) There is no evidence of record that the weights would inadvertently come loose with such a retaining bolt as asserted by Requester (Request 18), which would warrant a modification of the weight fitting system specifically disclosed in Reynolds, Jr. In this regard, Requester's reliance on *Application of Duhlberg*, 289 F.2d 522 (CCPA 1961) (Request 17), is misplaced. The cap in *Duhlberg*, was not held in place by another component. 289 F.2d at 523. Thus, *Duhlberg* is distinguishable on its facts. Accordingly, Requester's reasoning is insufficient to support a conclusion of obviousness.

Appeal 2012-006542
Reexamination Control 95/000,378
Patent 7,344,450 B2

Thus, while we have granted the Request for Rehearing to the extent that we have modified the interpretation of the claims, we decline to make any changes to the outcome of the Decision that affirmed the Examiner's decisions not to adopt the proposed rejections of claims 8, 9, 12, and 13.

<u>GRANTED-IN-PART</u>

PATENT OWNER:

LAW OFFICE OF DAVID H. JUDSON
15950 DALLAS PARKWAY, SUITE 225
DALLAS, TX 75248

THIRD-PARTY REQUESTER:

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
333 SOUTH HOPE STREET, 48TH FLOOR
LOS ANGELES, CA 90071